DENISE BRACCO et al., Appellants, v MABSTOA, Respondent.

First Department, May 13, 1986

APPEARANCES OF COUNSEL

*Terrence Ryan* for appellants.

*Steve S. Efron* of counsel *(Lawrence Heisler* and *John A. Murray* with him on the brief; *William E. Rosa,* attorney), for respondent.

**OPINION OF THE COURT**

MILONAS, J.

This action involves a claim for damages arising out of personal injuries suffered by plaintiff Denise Bracco as a result of the alleged negligence of defendant Manhattan and Bronx Surface Transit Operating Authority (MABSTOA). At approximately 9:00 A.M. on December 20, 1979, plaintiff, accompanied by her young son, boarded one of defendant's buses at Williamsbridge Road and Morris Park Avenue in The Bronx. It had snowed the previous day, leaving an accumulation of some 3 to 3½ inches. The weather report for the morning of the accident indicated that the temperature was in the low 20's. As plaintiff got onto the bus, she noticed that there was slush present on all of the front steps. The vehicle was not crowded, and it made about 4 or 5 stops before it reached plaintiff's intended destination. She then pulled on the signal cord, and the bus halted at the intersection of Bogart and Morris Avenues. She walked back to the front with her son, again observing the slush on the stairs. Standing on the platform leading to the stairwell, she uneventfully assisted her child off the vehicle. Thereafter, she stood up and,

holding one hand on the railing, she descended the first step and fell backward onto the stairs, striking against them with her back, left arm and left shoulder, her knees in the slush and her legs bent under her body.

At the trial held in connection with the instant matter, plaintiff called two passengers who were on the bus at the same time as she. They both described the incident in much the same manner as recounted by plaintiff and remembered seeing snow on the front steps. Police Officer Donald Sorbia, who arrived at the scene shortly after the accident, testified with the aid of notes made on the scene that he spoke to both the bus driver and plaintiff. He stated that there was slush on the front stairs of the bus. Moreover, the vehicle was resting at a steep incline at the bus stop, causing it to lean excessively. Although several pages of the officer's memo book were marked for identification and read to the jury, the portion relating to the slant of the bus was ordered stricken. According to the officer, the steps were more than just wet, there being a buildup of snow. The aided report and the accident report which he had filled out were both admitted into evidence with redactions as to the nature of plaintiff's injuries.

The bus driver also took the stand, asserting that while there has been some slush on the steps, the other people on the bus had gotten on and off without any difficulty. Following the accident, he had informed the bus company by telephone, and one of its dispatchers had arrived at the scene. The driver had then advised the dispatcher that the lady was leaving the bus when she slipped and fell on the second step. The driver conceded that he had not cleaned the stairs or placed any salt or other material on them nor had he been instructed to do so by the bus company. The written report of the accident prepared by the dispatcher was also entered into evidence. However, the court excised a section containing a notion that: "On inspection of bus, I found the steps of stairwell covered with slush. Slush removed and bus returned to service".

In its charge, the court instructed the jury that the standard of care applicable to a situation such as the one herein is that:

"A common carrier, such as the defendant here, has the duty to exercise reasonable care and diligence to keep its bus steps reasonably clear of snow and ice. The fact that a passenger falls on snow or ice and is injured does not, of itself, make the common carrier liable. Before a passenger may

recover from the common carrier, he or she must establish that the condition of the bus steps upon which she fell were so different in character from the condition ordinarily prevailing during winter in that locality, that is in the Bronx, as to constitute an *unusual danger* to passengers, that the common carrier, through its employees, in this case the bus operator, Mr. Simon, knew of the *unusually dangerous* condition or that it had existed for so long prior to the passenger's fall that the common carrier, in the exercise of reasonable care, should have known of it, and that after the common carrier knew or should have known of the condition and before the passenger's fall, there was sufficient time for the common carrier, using reasonable methods and in the exercise of reasonable care, to have corrected the condition, but that it failed to do so.

"The first questions for you to determine are whether the condition of the bus steps at the point where plaintiff fell were such that the common carrier, through its employee, the bus driver, should have reasonably anticipated *unusual danger* to passengers from its continued use, and, secondly, whether the common carrier, through its bus driver, knew or, in the exercise of reasonable care, should have known of the condition.

"If you find that the condition of the bus steps was not *unusually dangerous*, or that though it was *unusually dangerous*, the common carrier, through its employee, the bus driver, did not know of it and that it had not existed for a sufficient period of time prior to plaintiff's fall, that the common carrier, in the exercise of reasonable care, should have known about it, your verdict will be for the defendant and you will proceed no further.

"If you find that the condition of the bus steps was *unusually dangerous* and that the common carrier either knew that it was or that it had existed for sufficient time prior to plaintiff's fall, that the common carrier, in the exercise of reasonable care, should have known of it, you will consider whether the common carrier had reasonable time thereafter to correct the condition but failed to exercise reasonable care and diligence to do so." (Emphasis added.)

Despite being asked to do so by defendant's attorney (and, following delivery of the charge, by plaintiff's attorney in his exceptions), the court refused to charge that "a carrier owes a duty to its passengers to provide a reasonably safe place to alight from its vehicle". The court also declined to deliver plaintiff's written request stating, in part:

It is for the jury to determine:

"1) Whether under these circumstances the defendant bus company could have foreseen that slush and snow would accumulate on the steps of its bus; and

"2) Whether the defendant bus company took reasonable means to correct a potential danger to its passengers."

In urging reversal of the jury's verdict in favor of defendant, plaintiff contends that the redaction of the observations of the bus steps by the police officer and the dispatcher, made in the regular course of business, was erroneous and prejudicial to plaintiff. She also argues that the court improperly charged that before the jury could find negligence on the part of the defendant, it first had to determine that the steps were "unusually dangerous".

Some of the pages of Officer Sorbia's memo book were marked for identification and read to the jury. In addition, the aided report and accident report prepared by him were admitted into evidence, as well as the report of defendant's dispatcher. These reports were clearly made in the regular course of business and were admissible as a business record under CPLR 4518. Yet the trial court, while properly allowing the jury to examine these reports, nonetheless excised from the officer's accident report the statement that "Aided was passenger on bus. Upon leaving the bus, which was at the bus stop, she fell down three exit steps that had slush on them. Also, the incline of road caused bus to lean excessively". The court also redacted from the officer's memo book the comment that "Bus on incline at Bus Stop causing steps to be steep". The dispatcher's notation that "[o]n inspection of bus, I found steps of stairwell covered with slush. Slush removed and bus returned to service" was similarly redacted.

■ All of these entries were made in the regular course of business, and it was the duty of both the police officer and the dispatcher to include them in their reports. The references with respect to both the slush present on the steps and the position of the bus were, furthermore, derived from the personal observations of the dispatcher and the police officer and were not hearsay elicited from some unknown informant. Therefore, the court was not warranted in directing that the foregoing statements be redacted. *(See, Flynn v Manhattan & Bronx Surface Tr. Operating Auth.,* 94 AD2d 617, *affd* 61 NY2d 769; *Galanek v New York City Tr. Auth.,* 53 AD2d 586; *Toll v State of New York,* 32 AD2d 47; *Yeargans v Yeargans,*

24 AD2d 280.) Nor can it be held that any error in redacting them was harmless since the dispute in this case specifically involves the condition of the stairwell, the amount of snow and slush thereon and the degree of defendant's responsibility for the accident. Certainly, there is no question that plaintiff did, in fact, fall on the front steps as she was in the process of disembarking from the bus.

As for the jury charge challenged by plaintiff, it appears to have been adapted from PJI 2:225A relating to the standard of care which a municipality has to keep its streets and sidewalks reasonably clear of snow and ice. However, the standard applicable to a common carrier in securing the safety of its passengers is not equivalent to the duty which a municipality has with regard to snow and ice removal from its public ways.

The fact that a common carrier is operated by a governmental entity does not mean it has a lesser responsibility toward the public than one which is under private ownership. In that connection, there is simply no legal basis for imposing the additional burden of proof that plaintiff demonstrate the existence of an "unusually dangerous" condition before she be permitted to recover. Indeed, even if defendant's obligation herein was only to exercise ordinary and reasonable care to persons boarding or disembarking from its buses (see, Skelka v Metropolitan Tr. Auth., 76 AD2d 492), the same duty which a carrier has in maintaining approaches and station platforms (Lewis v Metropolitan Transp. Auth., 99 AD2d 246, affd 64 NY2d 670), the imposition of the added requirement that plaintiff show "unusual danger" dilutes even the lesser ordinary case standard.

According to PJI 2:161: "A common carrier does not guarantee its passengers against accident or injury. It is required to exercise reasonable care for their safety. Reasonable care means that care which a reasonably prudent carrier of passengers would exercise under the same circumstances, in keeping with the dangers and risks known to the carrier or which it should reasonably have anticipated."

While this court's decision in Lewis v Metropolitan Transp. Auth. (supra) suggests that a common carrier may owe a higher degree of care than ordinary and reasonable, the appropriate standard is at least that pertaining to common carriers and not that of a municipality engaged in snow and ice removal from its streets and highways. PJI 2:161 is clearly the preferred charge under the circumstances of this case.

Defendant cites *Barnwell v New York, New Haven & Hartford R. R. Co.* (13 AD2d 542, 543, *affd* 11 NY2d 847) for the proposition that a carrier is not obligated "to remove snow and ice from the exposed places on the steps of a moving train while it is traveling between many commuter stations". The situation before us, however, concerns a snowfall which occurred on the day preceding the accident. Further, involved here is not a commuter train with exterior steps exposed to falling snow while the carrier is in transit. Thus, the crucial question is whether defendant's failure to clear the stairwell of an accumulation of slush constituted a deviation from the standard of care which a common carrier customarily owes to its passenger. Despite defendant's contention that plaintiff failed to object to the court's jury instructions and thus may not raise that issue on appeal, the record clearly indicates that both sides asked that the Judge charge that a common carrier "owes a duty to its passengers to provide a reasonably safe place to alight from its vehicle" and that plaintiff, in addition to specifically submitting requests to charge (albeit in handwritten form), took exception to the court's refusal to deliver the requested instructions.

Consequently, the judgment of the Supreme Court, Bronx County (Irma Vidal Santaella, J.), entered on June 27, 1984, which, following a jury trial, found in favor of defendant Manhattan and Bronx Surface Transit Operating Authority, should be reversed, on the law, and the matter remanded for a new trial.

SANDLER, J. (concurring). In my opinion, the trial court erred in rulings that systematically excluded evidence with regard to the tilt of the bus resulting from the incline on which the bus was parked at the time plaintiff sustained her injuries. On that limited ground I join the court to reverse the judgment entered in favor of defendant, and to remand for a new trial.

The trial court apparently believed that evidence with regard to the incline represented an effort to advance a new theory of liability not set forth in plaintiffs' bill of particulars, and failed to appreciate that such evidence was relevant as a circumstance to be considered by the jury in determining whether or not the bus driver had exercised reasonable care with regard to the accumulation of slush on the bus steps. I acknowledge that it seems to me doubtful that the exclusion of the evidence with regard to the incline affected the jury

verdict since the plaintiff herself described it as "a little bit of an incline" in testimony that was stricken, on defendant's motion, from the record. However, other proffered testimony which the jury would have had a right to credit, including a description of the incline in the police officer's accident report, described the incline and its effect in more emphatic terms.

I also think it was an error to redact from the bus dispatcher's report his observation of slush on the steps, although I do not believe that, by itself, this error could have affected the outcome of the trial since it was duplicative of other testimony that was admitted.

As to that part of the trial court's instructions to the jury in which it explained defendant's duty to exercise reasonable care, and went on to state that liability could here attach only if the conditions created by the snow or slush were "unusually dangerous", the issue presented is of sufficient interest to merit further discussion. Preliminarily, I note that plaintiff did not object to this part of the charge, and the issue could be appropriately reached by this court only if we were to deem it "fundamental error", a doctrine that has always seemed to me a useful one, but one requiring caution in its application. In my opinion, this is an inappropriate case in which to apply this doctrine.

The facts in this case presented the trial court with an unusually difficult problem in terms of instructing the jury. I agree that the trial court erred in adapting to the circumstances presented PJI 2:225A, which states the municipality's standard of care for keeping its streets and sidewalks reasonably clear of snow and ice. Although the charge, as adapted, accurately set forth the defendant's duty to exercise reasonable care and diligence, it was at best irrelevant, and to some extent misleading, to impose on plaintiff the burden of establishing that the condition of the bus steps upon which she fell must be "different in character from the condition ordinarily prevailing during winter in that locality". In addition, the repetitive use of the terms "unusual danger" and "unusually dangerous condition" overstated to some extent plaintiff's burden.

The court may well be correct in its judgment that the standard general charge set forth in PJI 2:161 without any further guidance was the preferred approach to the situation presented. It seems to me, however, that the unusual circumstances of this case would have justified a trial court in

accompanying that instruction with some additional guidance to the jury. The unusual problem arises from the circumstance that while the tracking of any snow or slush on to the bus steps by passengers entering and leaving the bus makes such steps less safe than usual, it is doubtful that a bus driver may reasonably be required to leave his usual position to clean the bus steps each time some snow or slush is tracked on to them. Although a jury might reasonably be expected to have understood this reality without any specific comment by the court, I do not see how it would have been error for the court to have so instructed the jury. Moreover, as I evaluate the situation, liability could attach under the described circumstances only if the tracking of snow and slush on to the bus steps had created a condition of danger that should have been appreciated by the bus driver, and a Trial Judge would have been justified in so instructing the jury. This, in fact, was essentially the view taken by the plaintiffs' lawyer in summation, the central theme of which was that the buildup of snow had created a dangerous condition.

I find instructive the opinion of the Court of Appeals in *Palmer v Pennsylvania Co.* (111 NY 488), a case in which a passenger had fallen as a result of snow which had accumulated on the platform of a railroad car during the course of a railroad trip. No doubt there are practical differences between the problem presented to railroad employees by snow that fell during part of an uncompleted railroad trip in 1888, and that presented to the bus driver by the slush tracked on to bus steps by passengers during the course of the bus trip with which we are concerned. Recognizing the differences, the issue presented in the two cases seems to me sufficiently close to make the opinion of the Court of Appeals in *Palmer (supra)* helpful in two respects. First, it underlines the difficulty in formulating a general principle of law in this area, a difficulty which necessarily complicates the problem of instructing the jury. Second, it suggests an approach to the question that is of value in the situation here presented.

The Court of Appeals said *(supra,* pp 494-495): "It is quite impossible to lay down any general rule applicable to all circumstances, in respect to the degree of care to be observed by a railroad corporation in the removal of ice or snow from its cars, and each case must, therefore, be generally determined by its own peculiar circumstances; but it is safe to say that such corporations should not be held responsible for the dangers produced by the elements until they have assumed a

dangerous form, and they have had a reasonable opportunity to remove their effects."

I further disagree with the comment in the court's opinion that it was error for the Trial Judge not to charge that a common carrier "owes a duty to its passengers to provide a reasonably safe place to alight from its vehicle". Apart from the circumstance that this was first requested by plaintiffs' counsel after the charge was given and at a time when its statement would have given it undue importance, as observed by defense counsel, the facts here, on any realistic view, did not present an issue with regard to the obligation embraced in the requested instruction. Nor do I agree that it was error to refuse the additional instruction alluded to in the memorandum opinion since the court's instruction clearly included the essential aspects of that charge, the only issues raised by the trial court's instruction being matters as to which plaintiffs' counsel interposed no objection.

The cautious references in the court's opinion to the majority opinion in *Lewis v Metropolitan Transp. Auth.* (99 AD2d 246, *affd* 64 NY2d 670) invites further discussion because I think language in the *Lewis* opinion has some potential of becoming the source of confusion and misunderstanding. The suggestion in *Lewis (supra)* that a common carrier may owe a higher duty of care than ordinary and reasonable was background dicta in a decision that in fact evaluated the carrier's responsibility in accordance with the usual standard of reasonable care. It is apparent that in a scholarly review of the authorities the writer had failed to recall (understandably, since the issue was not critical to the determination of the case) that the principle imposing a higher degree of care on common carriers set forth in the older decisions (although never explicitly overruled) had generally come to be understood as inconsistent with the more modern view of liability in negligence cases. This general understanding was so clear that the authors of PJI 2:225A did not hesitate to depart from the older approach, clearly stating in the accompanying commentary that they had done so deliberately, and giving their reasons for so doing.

It is safe to say that in the intervening years since publication of the Pattern Jury Instructions hundreds of cases have been tried in which the jury was instructed in accordance with PJI 2:225A, and that scores of appeals arising out of such cases have been determined without the slightest intimation that this charge did not accurately set forth the controlling

law. In light of this history, it is clear that the affirmance by the Court of Appeals in *Lewis (supra,* p 671) "for reasons stated", was intended to refer to those reasons which were relevant to the decision in *Lewis* and were not intended as an endorsement of background dicta that inadvertently departed from the uniform understanding of the applicable standard of care. It is extremely unlikely that the Court of Appeals could have intended its affirmance in *Lewis* to be a vehicle for signalling doubt as to the correctness of a standard of responsibility that had become universally accepted in the courts of this State for many years, including all of the appellate courts that had reviewed appeals in common carrier cases.

Accordingly, on the limited ground indicated above, the judgment of the Supreme Court, Bronx County (Irma Vidal Santaella, J.), entered on June 27, 1984, which, following a jury trial, found in favor of defendant Manhattan and Bronx Surface Transit Operating Authority, should be reversed, and the matter remanded for a new trial.

MURPHY, P. J., FEIN and ELLERIN, JJ., concur with MILONAS, J.; SANDLER, J., concurs in an opinion.

Judgment, Supreme Court, Bronx County, entered on June 27, 1984, unanimously reversed, on the law, and the matter remanded for a new trial.