ARTHUR LESSER, Respondent, v MANHATTAN AND BRONX SUR-
FACE TRANSIT OPERATING AUTHORITY, Appellant.

First Department, May 24, 1990

## APPEARANCES OF COUNSEL

*Lawrence Epstein* of counsel *(John Corcos Levy,* attorney), for respondent.

*Steve S. Efron* of counsel *(Albert C. Cosenza,* attorney), for appellant.

## OPINION OF THE COURT

SMITH, J.

■ ■ This is an action for negligence growing out of the plaintiff's fall on the steps of a bus as he was getting off during a snowstorm. Because the trial court permitted the introduction into evidence and consideration by the jury of an operation manual used by the defendant and because the court failed to give an adequate charge on constructive notice, we reverse, and direct a new trial.

The 81-year-old plaintiff broke his left leg when he slipped and fell to the ground while descending the stairs of a 42nd Street cross-town bus operated by the defendant. The accident occurred on February 7, 1986 at about 2:30 in the afternoon.

The undisputed evidence was that it snowed continuously from 6 o'clock in the morning on the date of the accident, that by 2:30 P.M. several inches of snow had fallen and that the temperature that day was between 19 and 25 degrees Fahrenheit.

Plaintiff testified that when getting onto the bus, he felt packed slush on the stairs under his foot, but boarded the bus without incident. About 10 minutes later, after the bus had

made several stops, he proceeded to disembark using the same stairs and holding the railing to his left.

Plaintiff admitted that while disembarking he did not look down at the steps but looked instead at the back of a police officer in front of him so as to avoid bumping into her. That police officer, Cynthia Kleppel, who witnessed the accident, testified, as did plaintiff, that she observed both steps covered with dirty packed slush about one inch in depth.

James Scott, who had been a bus operator for the defendant Authority for 17 years, had no independent recollection of the occurrence, of the weather conditions, or of the condition of the steps. So far as he could recall, he had not cleared snow or slush from the steps of the bus at any time that day prior to the accident and in fact had not been supplied by the Authority with any tools for snow removal. He indicated that buses are outfitted with mirrors which allow drivers to see the steps and that it was his practice during inclement weather to advise passengers to watch their step when getting off the bus. However, both Lesser and Kleppel denied hearing any such warning. Scott indicated that if he had been aware of any accumulation of snow on the front or rear steps of the bus, he would have reported the condition to a dispatcher stationed along the bus route.

Over the objection of the Authority, plaintiff's counsel was permitted to introduce in evidence and to read to the jury the following portions of a document entitled "New Bus Operator Information Manual", first used by the Authority in 1980:

"GENERAL INFORMATION DUTIES OF SERVICE LINE OPERATORS.

"1. They are responsible for the safe operation, regularity and proper care and condition of their buses.

"2. They must take every precaution for the safety of passengers and pedestrians. * * *

"SAFE OPERATION OF BUSES. Bus operators are reminded that the safe operation of buses is their primary duty. * * *

"BOARDING AND ALIGHTING DURING SNOWSTORMS.

"Operators must give special attention to potential safety hazards when persons are boarding and alighting during snowstorms. In particular, operators should:

"Warn persons boarding and alighting to watch their step * * * make every effort to keep front and rear steps clear of accumulated snow."

Thereafter, a transportation safety expert called by plaintiff

testified that the Authority's rules and regulations relating to the operation of buses in snowy conditions are consistent with the standard of practice, custom and usage in the transportation industry. He offered his opinion that industry practices require drivers to inspect the bus at the end of each run for hazardous conditions, including the removal of accumulated snow from stairwells, that a driver has a duty to continuously monitor the steps for snow and to report such findings to road dispatchers along the route and to caution passengers, and that failure to do so is a deviation from good and accepted standards as practiced in the transportation industry.

The jury found the Authority to be 90% negligent and the plaintiff contributorily negligent to the extent of 10%. After a separate trial as to damages, judgment was entered in favor of plaintiff.

Defendant argues that because embarking passengers track snow onto the bus at every stop during a snowstorm, it would have been futile and well beyond what the law requires to attempt to keep the steps clear of all slush. Analogizing this case to those involving a municipality's duty to clear snow from sidewalks and roadways, the Authority contends that imposition of an obligation to remove snow, slush and ice even while a snowstorm is in progress is an onerous burden and that its duty to clear slush, snow and ice does not arise until a reasonable time after cessation of the storm. *(Valentine v City of New York,* 57 NY2d 932 [1982].)

However, the duty of a common carrier to provide safe passage is not akin to that of a municipal landowner to clear snow. A common carrier is required to exercise that care " 'which a reasonably prudent carrier of passengers would exercise under the same circumstances, in keeping with the dangers and risks known to the carrier or which it should reasonably have anticipated.' " *(Bracco v MABSTOA,* 117 AD2d 273, 278 [1st Dept 1986] [citing PJI 2:161].)

Moreover, this case is not comparable to those involving platforms exposed to the elements *(Palmer v Pennsylvania Co.,* 111 NY 488 [1888])* or unenclosed stairways *(Kelly v Manhattan Ry. Co.,* 112 NY 443 [1889])* wherein exposure to the elements would necessitate constant and most likely futile clearing of snow as it fell. Here, the steps were located inside the bus and were open to the elements only as passengers entered and alighted.

■ ■ Accordingly, the trial court properly denied the Au-

thority's motion to dismiss the complaint for failure to prove a prima facie case. The court erred, however, in allowing in evidence portions of defendant's "rules" which provide that a bus operator "make every effort to keep front and rear steps clear of accumulated snow" and "take every precaution for the safety of passengers and pedestrians".

While internal operating rules may provide some evidence of whether reasonable care has been taken and thus some evidence of the defendant's negligence or absence thereof, such rules must be excluded, as a matter of law, if they require a standard of care which transcends the area of reasonable care. *(Danbois v New York Cent. R. R. Co.,* 12 NY2d 234, 238, 239 [1963].)

In *Caputo v New York City Tr. Auth.* (86 AD2d 883 [1982]), the Second Department ordered a new trial where parts of rule 85 of the Transit Authority's rules and regulations were improperly submitted in an action for damages allegedly sustained by a passenger on a bus. Similar to the Authority training manual, rule 85 required that operators "take every precaution" to prevent injuries to passengers and "use every effort to guard passengers against accidents or annoyances." Citing *Danbois v New York Cent. R. R. Co. (supra),* the court in *Caputo* stated: "The rule is couched in language similar to that of a legal standard, and, as a matter of law, contains provisions which constitute a higher than reasonable standard of care. By submitting the provisions to the jury for consideration, the jury may have been confused as to the proper standard notwithstanding the limiting instructions as to the rule's applicability." *(Supra,* 86 AD2d, at 883.)

Thereafter, in *Crosland v New York City Tr. Auth.* (68 NY2d 165, 168-169 [1986]), the Court of Appeals observed that liability for the death of plaintiff's decedent could not be based upon the alleged breach of Transit Authority rule 85 which, by requiring employees to "take every precaution to prevent * * * injuries to persons," imposed a duty higher than that which the carrier actually owed—ordinary care commensurate with the existing circumstances. Indeed, the court in *Crosland* noted that the rule would have been inadmissible at trial for this reason.

The language of the training manual herein, as with rule 85 involved in *Caputo* and *Crosland (supra),* required a standard of care higher than that required by law. Thus, the trial court was in error when it charged the jury that: "The defendant's

own rules may be considered as evidence of what constitutes reasonable care, so long as they are not stricter than the required standard of care established by the evidence in this case."

This charge invited the jury to consider the manual, which was in evidence, as the standard of reasonable care to be applied.

Finally, on the issue of MABSTOA's constructive notice of the icy condition of the steps, the trial court charged:

"A common carrier, such as the defendant here, [h]as the duty to exercise reasonable care and diligence to keep its bus steps reasonably clear of snow and packed slush.

"If you find that a reasonable inspection of the front steps of the bus by the defendant's driver, Mr. Scott, would have revealed a dangerous condition, then you may find that the defendant had constructive notice of that dangerous condition and a duty to correct it."

█ The court should have further instructed the jury that in order to constitute constructive notice, a dangerous condition must have been visible and apparent and must have existed for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it. *(Gordon v American Museum of Natural History,* 67 NY2d 836, 837 [1986]; *Lewis v Metropolitan Transp. Auth.,* 64 NY2d 670 [1984], *affg* 99 AD2d 246, 249 [1st Dept 1984]; *see also, Bracco v MABSTOA, supra,* 117 AD2d, at 276 [1st Dept 1986] [trial court correctly instructed jury to consider whether the carrier had a reasonable amount of time after learning of the icy bus steps to correct it, but failed to exercise reasonable care and diligence to do so].)

Judgment, Supreme Court, New York County (John G. Dier, J.), entered April 21, 1989, which, upon a jury verdict, *inter alia,* found defendant-appellant Manhattan and Bronx Surface Transit Operating Authority (the Authority) 90% liable and plaintiff-respondent Arthur Lesser (Lesser) 10% liable, awarded Lesser the sum of $185,782.31 after deductions for Lesser's comparative fault and adjustments pursuant to CPLR 4545, unanimously reversed, on the law and the facts, and the case remanded for a new trial, without costs.

ROSENBERGER, J. (dissenting). I would affirm the judgment of the Supreme Court which, upon a jury verdict, found defendant 90% responsible for plaintiff's injuries. Neither the introduction of defendant's own training manual nor the court's

charge on constructive notice deprived defendant of a fair trial.

The facts are not in dispute. The driver of the bus, James Scott, admitted that he made no effort whatsoever to remove the snow and slush which had accumulated on the front steps of his bus from the time he began his run at 8:00 A.M. until the time of the accident at 2:30 P.M. even though he took a break at each end of each of his west side to east side and east side to west side runs. Nor did he advise the bus company or the dispatcher on his route of the condition of the bus steps, which he could see from an overhead mirror. Although Scott testified that he always warns his passengers to watch their step before getting off the bus, he also stated that he had no recollection of the events of February 7, 1986. Both plaintiff and Police Officer Cynthia Kleppel, who descended the steps of the bus just prior to plaintiff, testified that the driver never advised them to be careful departing.

The majority objects to the introduction into evidence of certain portions of defendant's training manual which instruct operators to give special attention to potential safety hazards during snowstorms. The manual advises operators to warn passengers to watch their step and to make every effort to keep the steps clear of accumulated snow. The majority claims that these rules impose a standard of care "which transcends the area of reasonable care" and that the court's charge improperly permitted the jury to consider the manual as the applicable standard of care.

In my view, the majority places undue emphasis on the admission of the cited provisions of the manual and fails to consider the court's charge as a whole. Liability in this case was not predicated solely on a violation of defendant's rules as contained in its manual (cf., Crosland v New York City Tr. Auth., 68 NY2d 165; Caputo v New York City Tr. Auth., 86 AD2d 883). The testimony of plaintiff's expert as well as that of defendant's expert as to the standards of practice and the custom and usage in the transit industry was in conformity with the instruction provided in defendant's manual and was pertinent to an assessment of the duty of care owed by a common carrier during a snowstorm. Such testimony was properly admitted to aid the jury in determining the reasonableness of defendant's conduct (Trimarco v Klein, 56 NY2d 98; Storm v New York Tel. Co., 270 NY 103; Shannahan v Empire Eng'g Corp., 204 NY 543; Galarza v Pacific Steel Boiler Corp., 147 AD2d 527). Defendant's expert agreed that a driver

who fails to take added precautions during a snowstorm, by at least warning passengers of an accumulation of snow and slush on the steps, deviates from acceptable standards of the industry.

Although the court's charge with regard to the introduction of the manual and its relation to the acceptable standard of care was somewhat confusing, the charge, when viewed as a whole, adequately instructed the jury on the applicable principles of law. The court specifically admonished the jury to disregard defendant's rules if they found them to be stricter than the required standard of care *(see, Danbois v New York Cent. R. R. Co.,* 12 NY2d 234) and then provided a detailed and correct instruction on the duty of care owed by common carriers (PJI 2:161; *Bracco v MABSTOA,* 117 AD2d 273).

Nor did the court's charge on constructive knowledge of a dangerous condition deprive defendant of a fair trial. The majority claims that reversal is mandated by the court's failure to instruct the jury to consider whether the dangerous condition was visible and apparent to defendant and whether it existed for a sufficient length of time prior to the accident to enable defendant to remedy it *(see, Gordon v American Museum of Natural History,* 67 NY2d 836). In *Gordon,* however, there was no evidence that anyone observed the piece of paper upon which plaintiff fell prior to the accident nor was there any indication that the paper had been present for some period of time. In the instant case, it had been snowing steadily for 8½ hours and passengers had been tracking snow onto the steps as they got on and off the bus since the driver put the bus in operation at 8:00 A.M. The bus was equipped with a mirror which enabled the driver to observe the condition of the steps. Moreover, the record reveals that a dispatcher was present on Scott's cross-town route and that Scott took a break after each run affording him the opportunity to take reasonable measures to provide for the safety of his passengers. Since it is undisputed that the dangerous condition was visible and apparent and existed for a sufficient period of time prior to the accident to permit defendant's employees to remedy it, the court's charge did not deprive defendant of a fair trial *(see, McGuire v Interborough R. T. Co.,* 104 App Div 105).

SULLIVAN, J. P., and CARRO, J., concur with SMITH, J.; MILONAS and ROSENBERGER, JJ., dissent in a separate opinion by ROSENBERGER, J.

Judgment, Supreme Court, New York County, entered on or about April 21, 1989, reversed, on the law and the facts, and the case remanded for a new trial, without costs and without disbursements.