95 N.Y.2d 568 (2000)
744 N.E.2d 685
721 N.Y.S.2d 857
HELEN L. GALAPO, Individually and as Administratrix of the Estate of JOE GALAPO, et al., Appellants,
v.
CITY OF NEW YORK et al., Respondents.
Court of Appeals of the State of New York.
Argued October 19, 2000.
Decided November 30, 2000.
*569 Kramer, Dillof, Tessel, Duffy & Moore, New York City (Matthew Gaier, Norman Bard and Thomas A. Moore of counsel), for appellants.
*570 Michael D. Hess, Corporation Counsel of New York City (Barry P. Schwartz, Leonard Koerner, Janet L. Zaleon and Christian Siragusa of counsel), for respondents.
Queller, Fisher, Dienst, Serrins, Washor & Kool, L. L. P., *571 New York City (Christopher L. Sallay of counsel), for Patrolmen's Benevolent Association and others, amici curiae.
Judges LEVINE, CIPARICK and ROSENBLATT concur with Chief Judge KAYE; Judge SMITH dissents and votes to reverse in a separate opinion in which Judge WESLEY concurs.

OPINION OF THE COURT
Chief Judge KAYE.
On August 16, 1988, Sergeant William Martin, an 18-year veteran of the New York City Police Department, and his partner Officer Joseph Galapo participated in a "buy and bust" operation. After observing a possible drug transaction, the officers approached a group of suspects. Sergeant Martin followed one of the suspects, Joseph Barker, and recovered a glassine envelope believed to contain heroin. While securing Barker, who was told to place his hands on the roof of a nearby car, Martin noticed another suspect refusing to cooperate with Galapo. Unsure whether the suspects were armed and believing the situation dangerous, Martin took out his gun, a .38 caliber revolver he had received as a reward for outstanding police duty in arresting an armed narcotics suspect. Martin pointed the revolver upward, with his index finger touching the trigger guard.
In an effort to escape, Barker suddenly pushed off the car and slammed into Martin, knocking him backward. Martin felt his gun fly from his hand. Reflexively, he grabbed the revolver *572 and, while he was attempting to regain his grip the gun discharged, tragically resulting in Galapo's death. The Police Department's Firearms Discharge Review Board, after investigation, concluded "that the discharge by Sergeant Martin was accidental and not in violation of Department Guidelines." In accordance with the Board's recommendation, no discipline was imposed. Barker was convicted of escape, criminal possession of a controlled substance and criminally negligent homicide in connection with Galapo's death (see, People v Barker, 186 AD2d 207, lv denied 81 NY2d 785).
Plaintiffsthe widow and children of Officer Galapocommenced this wrongful death action against Martin, the New York City Police Department and the City of New York, seeking $49 million in damages. Plaintiffs asserted causes of action for, among other things, negligence and violation of General Municipal Law § 205-e, which authorizes recovery for negligent failure to "comply with the requirements of any of the statutes, ordinances, rules, orders and requirements" (subd [1]) of any City department. Specifically, plaintiffs alleged violation of Procedure 104-1 (k) ("Use of Firearms") of the Police Department Patrol Guide, which at the time stated that to "minimize the possibility of accidentally discharging a weapon, firearms shall not be cocked and should be fired double action."
The trial court dismissed the complaint, concluding both that plaintiffs' negligence claim was barred by the "Santangelo rule" (see, Santangelo v State of New York, 71 NY2d 393, 397) and that the Patrol Guide could not serve as a basis for liability under General Municipal Law § 205-e. Disagreeing with the latter conclusion, the Appellate Division reversed (219 AD2d 581). At trial, plaintiffs presented circumstantial evidence that Martin's gun had been cocked, that its hammer had been depressed making it easier for the weapon to discharge. The case proceeded to a jury award of $17.9 million. Defendants moved to set aside the verdict, urging that statutory liability could not be based on violation of Patrol Guide Procedure 104-1 (k). Bound by the Appellate Division's earlier determination, Supreme Court denied the motion. The Appellate Division, however, itself reversed, concluding that this Court's decisions in Gonzalez v Iocovello (93 NY2d 539), Desmond v City of New York (88 NY2d 455, rearg denied 89 NY2d 861) and St. Jacques v City of New York (88 NY2d 920) had "effectively overruled" its prior determination (267 AD2d 349, 350). We agree.

*573 Discussion
Central to this appeal is a longstanding common-law doctrine known as the "firefighters' rule." The rule bars recovery by a firefighter against a property owner or occupant for injuries related to the risks firefighters are expected to assume as part of their job (see, Kenavan v City of New York, 70 NY2d 558, 566; Cooper v City of New York, 81 NY2d 584, 588). The rule is grounded on the policy thatunlike members of the general publicfirefighters are specially trained and compensated to confront hazards and therefore "must be precluded from recovering damages for the very situations that create a need for their services" (see, Santangelo v State of New York, supra, 71 NY2d, at 397).
The Legislature opened a narrow passageway around the common-law rule by enacting General Municipal Law § 205-a, affording firefighters and their survivors a statutory cause of action for line-of-duty injuries resulting from negligent noncompliance "with the requirements of any [governmental] statutes, ordinances, rules, orders and requirements" (see, L 1935, ch 800, § 2, as amended by L 1936, ch 251, § 1; Desmond v City of New York, supra, 88 NY2d, at 462).
In Santangelo, this Court recognized that the firefighters' rule applies equally to police officers. Like firefighters, police officers are "experts engaged, trained and compensated by the public to deal on its behalf with emergencies and hazards often created by negligence" (Santangelo v State of New York, supra, 71 NY2d, at 397). They too are barred from recovering damages for on-the-job, work-related injuries. Soon after Santangelo, the Legislature enacted General Municipal Law § 205-e, allowing to police officers the same limited exception to the common-law rule that had been made available to firefighters (see, Div of Budget Report, Bill Jacket, L 1989, ch 346 [section 205-e "merely extends to on-duty police officers, a right already enjoyed by firemen and by the general public"]).
The Legislature most recently added yet another circumscribed exception to the common-law rule by authorizing a cause of action for firefighters and police officers for on-duty injuries "proximately caused by the neglect, willful omission, or intentional, willful or culpable conduct of any person or entity, other than that police officer's or firefighter's employer or co-employee" (see, General Obligations Law § 11-106 [1] [emphasis added]). As the Governor noted in approving the legislation, "this bill does not authorize injured firefighters and *574 police officers to sue their fellow firefighters and police officers. Accordingly, it does not carry with it `the potential for impairing discipline and the teamwork values that are vital to effective firefighting and law enforcement'" (Governor's Mem approving L 1996, ch 703, 1996 McKinney's Session Laws of NY, at 1935 [citation omitted]).
Like General Municipal Law § 205-a (1), General Municipal Law § 205-e (1) permits police officers or their survivors to recover for injuries or death caused by negligent failure to comply "with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments or of any and all their departments, divisions and bureaus." Although section 205-e purports to authorize recovery for noncompliance with "any" governmental requirement, it is well settled that the statute cannot "reasonably be applied literally in accordance with its broad language" (Desmond v City of New York, supra, 88 NY2d, at 463; see also, Governor's Mem approving L 1996, ch 703, 1996 McKinney's Session Laws of NY, at 1936-1937). Rather, as a prerequisite to recovery, a police officer must demonstrate injury resulting from negligent noncompliance with a requirement found in a "well-developed body of law and regulation" that "imposes clear duties" (see, Desmond v City of New York, supra, 88 NY2d, at 464; see also, Patrolmen's Benevolent Association Letter in Support, Bill Jacket, L 1989, ch 346 [statute authorizes cause of action based on disregard of "a local statute or ordinance"]; Sponsor's Mem, Bill Jacket, L 1992, ch 474 ["It was clearly the intent of the Legislature, in enacting General Municipal Law § 205-e, that this Section apply to the violation of any statute or other law"]).
Procedure 104-1 (k) of the New York City Police Department Patrol Guide is not part of a duly-enacted body of law or regulation that gives rise to civil liability under General Municipal Law § 205-e (see, Malenczak v City of New York, 265 AD2d 532, 533; Flynn v City of New York, 258 AD2d 129, 138; Lawrence v City of New York, 240 AD2d 711, lv denied 90 NY2d 812; Luongo v City of New York, 240 AD2d 712, lv denied 90 NY2d 812; see also, Shelton v City of New York, 256 AD2d 611, 613 [internal Fire Department rule cannot serve as a predicate for liability under General Municipal Law § 205-a], lv dismissed and denied 93 NY2d 907; Pascarella v City of New York, 146 AD2d 61, 70, lv denied 74 NY2d 610).
The Patrol Guide is an internal manualnearly 1,500 closely printed pagescontaining thousands of rules, procedures and *575 policies adopted by the Police Commissioner for the governance, discipline, administration and guidance of the Police Department (see, Foreword to New York City Police Department Patrol Guide). It is not a body of law or regulation establishing clear legal duties that should serve as a basis for civil liability of municipalities (contrast, Gonzalez v Iocovello, supra, 93 NY2d, at 551 [permitting section 205-e recovery based on violation of Vehicle and Traffic Law § 1104, which establishes a standard for determining civil liability for damages]; Cosgriff v City of New York, 93 NY2d 539, 552 [authorizing section 205-e recovery based on Administrative Code provision recognizing the potential for liability]). Significantly, though some of its provisions are couched in mandatory terms, the Patrol Guide does not prescribe the specific action to be taken in each situation encountered by individual officers, but rather is intended to serve as a guide for members of the Police Department.
Establishing Procedure 104-1 (k) as a foundation for monetary damage lawsuits under section 205-e, with the specter of massive civil liability, would, moreover, operate as a powerful disincentive to the adoption of internal rules, which authorize the police department to discipline officers even before conduct might become actionable by members of the general public (see, Flynn v City of New York, supra, 258 AD2d, at 138). As illustrated by the present case, it would additionally allow a trier of fact, using rules the Police Department itself regards merely as "a guide," to second-guess line-of-duty decisions on matters affecting public safety (see, Desmond v City of New York, supra, 88 NY2d, at 464; see also, Governor's Mem approving L 1996, ch 703, 1996 McKinney's Session Laws of NY, at 1936-1937).
Permitting the recovery of damages by a police officer based on a fellow officer's violation of Procedure 104-1 (k) would, finally, be at odds with the history and purpose of General Municipal Law § 205-e. The overriding purpose behind adoption of General Municipal Law § 205-e was to ameliorate the effect of the common-law rule that disadvantaged police officers who, unlike members of the general public, were barred from recovery for injuries resulting from risks inherent in their job. The statute, was not, however, intended to give police officers greater rights and remedies than those available to the general public, as would occur here if plaintiffs could found their damages claims on Procedure 104-1 (k) (see, Crosland v New York City Tr. Auth., 68 NY2d 165, 168 [liability cannot be based on alleged breach of Authority rule imposing higher duty *576 than that owed under common law]; see also, Rivera v New York City Tr. Auth., 77 NY2d 322, 329 [Authority rule imposing higher standard inadmissible at trial], rearg denied 77 NY2d 990; Lesser v Manhattan & Bronx Surface Tr. Operating Auth., 157 AD2d 352, 356 [internal operating rules inadmissible where "they require a standard of care which transcends the area of reasonable care"] [Smith, J.], affd sub nom. Fishman v Manhattan & Bronx Surface Tr. Operating Auth., 79 NY2d 1031, rearg denied 80 NY2d 893).
In sum, General Municipal Law § 205-e was not intended to allow suits by fellow officers or their survivors for "breaches of any and all governmental pronouncements of whatever type" (Desmond v City of New York, supra, 88 NY2d, at 464). Procedure 104-1 (k) of the New York City Police Department Patrol Guide is not a statute, ordinance, rule, order or requirement giving rise to section 205-e recovery.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
SMITH, J. (dissenting).
The majority holds that a provision of the New York City Police Department Patrol Guide cannot serve as a predicate for a civil action under General Municipal Law § 205-e. Because Patrol Guide Procedure 104-1 (k) ("Use of Firearms") is part of a well-developed body of law with a particularized mandate, we dissent.
On August 16, 1988, during a buy-and-bust operation, while the police were apprehending several suspects, Sergeant William Martin accidentally shot and killed Officer Joseph Galapo. By verified complaint sworn to on February 22, 1989, Helen Galapo, as administratrix of the estate of Joseph Galapo, and as mother and natural guardian of their three minor children, Daniel J. Galapo, Robert M. Galapo, and Richard B. Galapo, brought an action alleging negligence and wrongful death against the City of New York, the New York City Police Department, and Sergeant William L. Martin in the Supreme Court, Kings County. A verified bill of particulars, dated August 15, 1989, alleged that the defendants were negligent "in cocking said hand gun improperly, negligently and carelessly and in violation of the rules and regulations in the use of a hand gun."
Supreme Court granted defendants' motion for summary judgment dismissing the complaint. The Appellate Division reversed, holding "Supreme Court erred in concluding that an alleged violation of the New York City Police Department Patrol *577 Guide procedures concerning the use of firearms could not serve as the basis for an action seeking recovery pursuant to General Municipal Law § 205-e" (219 AD2d 581, 582). The Appellate Division concluded that the broad language of General Municipal Law § 205-e did not preclude the assertion of a claim based upon an alleged violation of an internal police department procedure.
By an amended complaint, the plaintiffs alleged that the defendants were negligent in violating requirements and regulations of the Police Department, including General Municipal Law § 205-e. On November 14, 1997, a jury rendered a verdict in favor of plaintiffs in the sum of $17.9 million. Supreme Court reduced the jury verdict to $5,095,000. The Appellate Division (267 AD2d 349, 350) reversed the judgment and dismissed the complaint, concluding, "The decisions of the Court of Appeals in Gonzalez v Iocovello,[[1]] Desmond v City of New York[[2]] and St. Jacques v City of New York,[[3]] effectively overruled this Court's decision in Galapo v City of New York [219 AD2d 581]." The Court noted that the only basis for the jury's determination of liability was a violation of the Patrol Guide.
General Municipal Law § 205-e provides that a police officer can maintain a cause of action where injury or death "occurs directly or indirectly as a result of any neglect, omission, willful or culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state * * * or city governments or of any and all their departments, divisions and bureaus."[4]
*578 The primary issue on this appeal is whether the Patrol Guide meets the definition of a rule or requirement under General Municipal Law § 205-e. The purpose of the 1989 enactment was to provide police officers injured in the line of duty with the same right of action accorded firefighters in 1935 (see, General Municipal Law § 205-a, adopted L 1935, ch 800; L 1989, ch 346). The statute was enacted in response to this Court's decision in Santangelo v State of New York (71 NY2d 393, 397), which denied recovery to police officers who were injured while attempting to subdue an escaped mental patient. Based upon public policy, the Santangelo Court concluded that the very nature of police work was to engage in difficult situations for which police officers received special training and additional benefits (71 NY2d, at 398).
In 1992, General Municipal Law § 205-e was amended to make clear that liability for injury or death of police officers was not limited to violations relating to the maintenance and control of premises, which is the requirement for claims by firefighters, but was designed to cover injury or death "at any time or place." This amendment was meant to clarify for courts that the intent of the Legislature was to allow broad-based recovery when a police officer or firefighter was injured or killed as the result of third-party negligence (see, L 1992, ch 474).
In Desmond v City of New York, citing the legislative history, this Court stated that the purpose of General Municipal Law § 205-e was to provide recourse to a police officer "`where injury is the result of negligent non-compliance with well-developed bodies of law and regulation' which `impose clear duties'" (88 NY2d 455, 464; Mem of State Executive Dept, 1989 McKinney's Session Laws of NY, at 2141). In order for a departmental policy to be a requirement under General Municipal Law § 205e, the policy must have some historical basis in law, and there must be a particularized mandate or clear legal duty embodied in the procedure which places restrictions on the officer's actions *579 (see, Desmond, supra, at 464). Patrol Guide Procedure 104-1 (k) meets the test set forth in Desmond.
The legislative history of section 205-e demonstrates unmistakably the intent of the Legislature in authorizing lawsuits for injuries to, or the death of, police officers. Less than a year ago, in discussing General Municipal Law § 205-e, this Court noted that since its passage in 1989, the section has been amended on several occasions to answer restrictive court interpretations and to emphasize the legislative intent that the section be interpreted "expansively" (see, Gonzalez v Iocovello, 93 NY2d 539, 548; L 1990, ch 762; L 1992, ch 474; L 1994, ch 664; L 1996, ch 703) (emphasis supplied).
The plain wording of Patrol Guide Procedure 104-1 (k) indicates that it is a requirement of the New York City Police Department. The section reads:
"To minimize the possibility of accidentally discharging a weapon, firearms shall not be cocked and should be fired double action" (emphasis in original).
Plaintiff's expert referred to the Patrol Guide as "the Bible, it is what you go by." Moreover, it is not disputed that the Patrol Guide contains requirements and regulations for officers which can serve as the basis for discipline and dismissal (see, e.g., People v Feerick, 93 NY2d 433, 442-443; Matter of Williams v Police Dept., 50 NY2d 956). The requirement in question was developed as the result of growing concern in New York State and across the country about unnecessary and unwarranted accidental killings of police officers and suspects being apprehended (see, Tennessee v Garner, 471 US 1, 15-19; McCummings v New York City Tr. Auth., 81 NY2d 923). Robert DiGrazia, plaintiff's expert, and a former Superintendent of Police in St. Louis County, Missouri, and Boston, Massachusetts, testified that the prohibition against cocking of guns evolved during the 1970s and 1980s because of the number of accidental shootings, with most of the injuries occurring to police officers rather than citizens. The end result was the purchase by municipalities of guns which could not be cocked. Such purchases began in New York City in 1987.
Martin Landa, a former police officer and Chairman of the Law Department at the Police Academy, was at one time responsible for all of the legal training of entry level police officers and had written most of Patrol Guide Procedure 104-1 *580 (k). Officer Landa testified to the mandatory nature of the provision for both police officers who were in training and those who had completed it. From the time that an incoming police officer received training at the police academy and during his or her service on the force, adherence to this section of the Patrol Guide was required.[5] Thus the requirement meets the Desmond test of a clear, unequivocal mandate that developed out of a concern over the negligent use of an essential piece of law enforcement equipmenta gun.
The majority writing sets forth a test for determining whether the procedure in question constitutes a qualifying mandate that would serve to impose liability under General Municipal Law § 205-e. The writing indicates that the Department Patrol Guide "is not part of a duly-enacted body of law or regulation" and thus does not give rise to civil liability under the statute (emphasis supplied). The majority appears to adopt a formal legislative/administrative enactment test. The statute imposes no such requirement and further recognizes that "any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments or of any and all their departments, divisions and bureaus" will qualify in defining a claim under the statute (General Municipal Law § 205-e [1]). The language of the statute is all encompassing and clearly can include a rule of a department, such as the Patrol Guide.
The majority writing identifies three reasons why the rule in question does not fall within the sweep of section 205-e. One is that the Patrol Guide is an internal manual and "not a body of law or regulation establishing clear legal duties that should *581 serve as a basis for civil liability of municipalities." As noted above, the provision in question was developed out of a concern for the very outcome that serves as the basis for this lawsuit the negligent use of a weapon in a potentially dangerous situation. The manual is significant enough that a violation of it can be grounds for dismissal or discipline and the language of the section in question is mandatory. "[F]irearms shall not be cocked." The regulation could not be clearer. Furthermore, the record reflects that the City adhered to the prohibition of not allowing a firearm to be cocked by ceasing the purchase of guns that could be cocked prior to the accident.
Second, the majority asserts that allowing the Patrol Guide section in question to serve as a foundation for a section 205-e claim "would additionally allow a trier of fact, using rules the Police Department itself regards merely as `a guide,' to second-guess line-of-duty decisions on matters affecting public safety." (Majority opn, at 575, citing Desmond, supra. The memorandum in question in Desmond failed as a directive because it contained "no particularized mandates, but instead simply authorizes the officer to exercise a measure of guided discretion within certain specific criteria" id., at 464.) In this case, the statute does not call upon the officer to make a specific, split-second, discretionary decision that could be reviewed for its appropriateness by the trier of fact. The rule mandates that no officer shall cock his or her gun. Judgment in difficult situations is not called for here; the mandate is clear.
Third, the majority concludes its analysis by determining that allowing recovery in this instance would "be at odds with the history and purpose of General Municipal Law § 205-e." As noted earlier, the purpose of General Municipal Law § 205-e was to ameliorate the Santangelo rule and we have been repeatedly told by the Legislature that the statute is to be applied expansively (see, L 1990, ch 762; L 1992, ch 474; L 1994, ch 664; L 1996, ch 703; see also, Gonzalez, supra, at 548). The majority concludes, without showing how it reached that conclusion, that to afford the officer in this case a cause of action would provide police officers with greater rights than those available to the public. It cites Crosland v New York City Tr. Auth. (68 NY2d 165, 168). Crosland stands for the proposition that common-law liability cannot be imposed upon a municipality based on a breach of a rule which imposes a higher duty than that owed under common law. Here, we are not concerned with a common-law claim but a specific statutory cause of action *582 given to police officers. The fact that the Patrol Guide establishes a specific and mandatory level of conduct with regard to the use of firearms has no correlation to a common-law claim that an individual might have with regard to a claim against a municipality.
As this Court has noted before, "When the Legislature's words and actions point out the correct interpretative road to follow, there is no justification for a court of law to follow another path" (Schiavone v City of New York, 92 NY2d 308, 317). To our minds the majority has taken the wrong road in its attempt to restrict the sweep of the statute.
Accordingly, we dissent and would reinstate the trial judgment.
Order affirmed, with costs.
NOTES
[1] 93 NY2d 539
[2] 88 NY2d 455
[3] 88 NY2d 920
[4] "1. In addition to any other right of action or recovery under any other provision of law, in the event any accident, causing injury, death or a disease which results in death, occurs directly or indirectly as a result of any neglect, omission, willful or culpable negligence of any person or persons in failing to comply with the requirements of any of the statutes, ordinances, rules, orders and requirements of the federal, state, county, village, town or city governments or of any and all their departments, divisions and bureaus, the person or persons guilty of said neglect, omission, willful or culpable negligence at the time of such injury or death shall be liable to pay any officer, member, agent or employee of any police department injured, or whose life may be lost while in the discharge or performance at any time or place of any duty imposed by the police commissioner * * * or to pay to the spouse and children * * * a sum of money, in case of injury to person, not less than one thousand dollars, and in the case of death not less than five thousand dollars, such liability to be determined and such sums recovered in an action to be instituted by any person injured or the family or relatives of any person killed * * *

"3. This section shall be deemed to provide a right of action regardless of whether the injury or death is caused by the violation of a provision which codifies a common-law duty and regardless of whether the injury or death is caused by the violation of a provision prohibiting activities or conditions which increase the dangers inherent in the work of any officer, member, agent or employee of any police department." (General Municipal Law § 205e.)
[5] The mandatory nature of Patrol Guide Procedure 104-1 (k) is shown both by the Police Student's Guide and the Patrol Guide. The Police Student's Guide reads as follows:

"TO MINIMIZE THE POSSIBILITY OF ACCIDENTALLY DISCHARGING A WEAPON, FIREARMS SHALL NOT BE COCKED AND SHOULD BE FIRED DOUBLE ACTION.
"There have been tragic incidents in the past where police officers have accidentally discharged their weapon because the hammer was cocked. Considering the possibility of an accidental discharge, the Department mandates that officers fire their weapons double action only.
"EXAMPLE: You are in hot pursuit of a suspect who has just committed a robbery with a firearm. While chasing this suspect you draw your revolver. If you cocked your revolver and then tripped, fell or lost your balance, you or an innocent bystander may accidentally be injured or killed. To prevent this occurrence the Department mandates that NO police officer shall cock his/her weapon" (emphasis in original).
The provision contained in the Police Student's Guide is carried forward into the Patrol Guide Regulations as Patrol Guide Procedure 104-1 (k).