EVELINA LEWIS, Respondent, v METROPOLITAN TRANSPOR-
TATION AUTHORITY et al., Appellants.

First Department, February 28, 1984

APPEARANCES OF COUNSEL

*John F. Mulholland* of counsel (*Mulholland, Minion & Roe,* attorneys), for appellants.

*S. Reid Kahn* and *Herbert Rand* of counsel (*Kane, Kessler, Proujansky, Preiss & Nurnberg, P. C.,* attorneys), for respondent.

OPINION OF THE COURT

KASSAL, J.

On September 28, 1978, plaintiff, then age 41 and concededly an obese woman, weighing between 180 and 230 pounds, was injured when she slipped and fell on the train platform while attempting to board a Long Island Railroad Company (LIRR) train at defendants' Northport station. Plaintiff, together with her daughter, Diane, had been visiting plaintiff's son at the Veterans Hospital. After

taking a taxi to the Northport station, plaintiff went to the stationmaster's office to secure change to pay for the cab, while Diane proceeded ahead of her and boarded the train. The train was in the station at the time and was not due to depart for another 10 minutes. From the record, it appears that the train had been at the Northport station for between 10 and 15 minutes. As plaintiff approached the train, she observed two LIRR employees leaning against a fence, talking — the brakeman and the conductor, located about 30 feet away at the front of the train. The engineer was standing on the diesel engine at the time. The station platform, which is street level, was constructed of asphalt or blacktop, described as a tar-like substance.

As plaintiff attempted to board the train, she placed her right hand on the railing of the car to lift herself onto the first step, when she slipped on a slippery substance on the station platform breaking the heel of her shoe, which went onto the tracks. Plaintiff had not seen the substance before since it blended with the black platform. She described it as "dark * * * oil and sticky and gooky". Diane, who had already boarded the train at the time, described it as "a splat of melted oil," with "a line running through it, indicating where mommy's foot had went throgh [sic] it." Diane admitted she had not observed the substance until after the accident, when she left the train to aid her mother. According to plaintiff, the substance was no larger than an inch or an inch and a half. However, both the conductor and the brakeman observed no "splat," liquid or substance, either on the platform or on plaintiff's heel, which had been retrieved from the tracks. The trainman, Kempster, conducted an inspection of the platform which failed to disclose anything oily or slippery, although he did notice scratches in the blacktop surface as a result of plaintiff's heel breaking off, "but there was no oil".

Following the accident, plaintiff was treated in the emergency room of Huntington Hospital and, after returning to her home, was admitted the next day to St. Barnabas Hospital. There were a total of six hospital admissions, with four operative procedures performed to relieve the back pain, including three laminectomies. Subsequent to plaintiff's discharge from St. Barnabas, she was involved

in another unrelated accident in December, 1978, when she was struck by a kitchen cabinet which fell from the wall. In all, her special damages exceeded $55,000. On three separate occasions during the trial and once after verdict, defendants moved to dismiss upon the failure of plaintiff to adduce evidence that defendants had actual or constructive notice of the condition prior to the accident. The trial court reserved decision on each such application and, following submission of memoranda at the close of the case, denied the motion, concluding that the jury had been properly charged with respect to both actual and constructive notice. The jury returned a verdict in favor of plaintiff in the sum of $750,000, and found plaintiff to be 25% contributorily negligent. The trial court concluded that the verdict was excessive, and directed a new trial on damages unless plaintiff stipulated to a reduction in the verdict to $400,000, to be further reduced by the 25% culpability of plaintiff as found by the jury. Plaintiff stipulated to the reduction.

As a common carrier, defendant is held to a high standard of care, requiring the exercise of the highest or utmost caution for the safety of its passengers. However, while the operative standard does not make the carrier an insurer, it is "bound to use its utmost skill and vigilance to guard against the possibility of accidents from the condition of its road and of the machinery used in the transportation of passengers." (*Stierle v Union Ry. Co.,* 156 NY 70, 74; see, also, *McLean v Triboro Coach Corp.,* 302 NY 49; 2A Warren, NY Negligence, Common Carriers, § 3.04 [2], p 542.) This high duty of care applies with respect to injury or damage resulting from the carriage of passengers.

A lesser standard of care, however, has been imposed with respect to approaches, station platforms, halls and stairways, under which the carrier is held "to exercise ordinary care, in view of the dangers attending its use, to make it reasonably adequate for the purpose to which it was devoted." (*Lafflin v Buffalo & Southwestern R. R. Co.,* 106 NY 136, 139; see, also, *Kelly v Manhattan Ry. Co.,* 112 NY 443; *White v New York Cent. R. R. Co.,* 228 App Div 50; *Boettcher v Dowling,* 243 App Div 397, affd 270 NY 557; 17 NY Jur 2d, Carriers, §§ 414, 417.) Thus, almost a century

ago, in *Kelly v Manhattan Ry. Co.* (*supra*) the Court of Appeals distinguished the situation involving an injury on a stairway or platform from that sustained while a passenger was being transported, whether resulting from a defect in the roadbed, the machinery or the construction of the cars: "But in the approaches to the cars, such as platforms, halls, stairways and the like, a less degree of care is required, and for the reason that the consequences of a neglect of the highest skill and care which human foresight can attain to are naturally of a much less serious nature. The rule in such cases is that the carrier is bound simply to exercise ordinary care in view of the dangers to be apprehended" (112 NY, at p 450).

This standard of ordinary care was applied by us in *Boettcher v Dowling* (*supra*) where plaintiff fell on a slippery and muddy floor at the arcade of defendant's subway station. Similarly, in *White v New York Cent. R. R. Co.* (*supra*) ordinary negligence principles were held applicable where plaintiff, about to board a train, tripped over the suitcase of another passenger which had been left on the station platform by defendant's porter. Likewise, in *McSween v Murray* (261 App Div 198) we applied a standard of ordinary care where plaintiff had been injured as a result of a slip and fall on an icy platform at one of defendant's railroad stations.

The law has never exacted of common carriers an absolute duty to maintain approaches and station platforms in a condition so as to render it impossible for a passenger to slip or become injured. Rather, the standard is to exercise reasonable care under the circumstances. Except in cases where the defendant created the condition, thus constituting actual notice to establish a prima facie case, a plaintiff must prove actual or constructive notice of the dangerous or defective condition and a reasonable time within which to correct or warn about its existence. (*Boettcher v Dowling, supra; Sikora v Apex Beverage Corp.,* 282 App Div 193; *Dickerson v Long Is. R. R. Co.,* 266 App Div 852.) Constructive notice "will generally be found where the defect is visible and apparent, and has been in that condition so long that the city or the contractor is presumed to have seen it, or to have been negligent in failing to see it."

(*Schmidt v City of New York,* 179 App Div 667, 669, affd 228 NY 572.) In *Boettcher,* we reversed the judgment in favor of plaintiff and dismissed the complaint, finding that there had been no showing that defendants had actual or constructive notice of the slippery or muddy floor of the subway station. Similarly, in *Dickerson,* where plaintiff fell on a banana peel on the stairway at defendant's Jamaica station, the Appellate Division, Second Department, affirmed the order which had set aside a verdict in favor of plaintiff and dismissed the complaint, finding no proof of actual or constructive notice.

The same principle, requiring a showing of actual or constructive notice to establish plaintiff's prima facie case, has been imposed in personal injury actions against a municipality or a lessor, requiring either proof that defendant created the condition or had a sufficient opportunity, within the exercise of reasonable care, to remedy the situation (*Madrid v City of New York,* 42 NY2d 1039; *Harris v Village of East Hills,* 41 NY2d 446; *Gaffney v City of New York,* 218 NY 225; *Saez v City of New York,* 82 AD2d 782). The rule has also been applied in cases involving a slip and fall as the result of a slippery or foreign substance on the floor of a supermarket, grocery or other retail store (*Ryan v City of New York,* 83 AD2d 574; *Cameron v Bohack Co.,* 27 AD2d 362; *Stevens v Loblaws Market,* 27 AD2d 975; *Dowling v Woolworth Co.,* 16 AD2d 672). In terms of a foreign substance, it was observed in *Donohoe v Great Atlantic & Pacific Tea Co.* (277 App Div 739, 741): "The existence of an isolated small patch of oil or other similar foreign substance does not, in and of itself, establish a cause of action. It was the duty of plaintiff to go further and show its presence under circumstances sufficient to charge the defendant with responsibility therefor; in other words, to prove either that defendant had knowledge of the alleged dangerous condition, either actual or constructive, or that it caused the condition to be created by its own affirmative act (*Mona* v. *Erion,* 223 App. Div. 526; *Lavine* v. *United Paper Board Co.,* 243 N.Y. 631; *Kipp* v. *Woolworth & Co.,* 150 App. Div. 283, appeal dismissed, 206 N.Y. 628.)"

Applying these principles here, we find the record palpably insufficient to have warranted the submission of the

case to the jury. In contrast to the testimony offered by plaintiff, which was limited to the existence of the condition but did not cover its duration, defendants denied that there had been a greasy or oily substance on the platform at the time of the accident. The LIRR trainman, conductor and police officer who responded following the accident all testified that they found no substance on the platform. In light of the jury's general verdict in favor of plaintiff, however, it is clear that the trier of the facts accepted the version offered by plaintiff, rejecting defendants' account of the events. However, there was no showing that the condition was created by the defendants nor anything to establish either actual or constructive notice, a necessary element in plaintiff's prima facie case. All that was presented in evidence was that the train was in the station for 10 to 15 minutes before the accident, but the record is barren of any proof as to how long the slippery substance had been on the platform prior to the occurrence. Thus, in the absence of some evidence that the condition existed for a sufficient period to afford the carrier, in the exercise of reasonable care, an opportunity to discover and correct it, there was no factual issue for the jury. The mere happening of the accident does not establish liability on the part of the defendant.

As an alternate theory of liability, plaintiff raises on appeal the principle expressed in *Sheridan v Brooklyn City & Newtown R.R. Co.* (36 NY 39) that there existed a special duty by reason of her obesity, a condition which required special consideration and treatment. However, that issue was never raised at trial and may not be relied upon for the first time on appeal (see *Matter of Garfield,* 14 NY2d 251, 260; *Lindlots Realty Corp. v County of Suffolk,* 278 NY 45, 55; *Matter of Angel Fabrics [Cravat Pierre, Ltd.],* 51 AD2d 951, 952, mot for lv to app den 39 NY2d 711; *Vaughan v Globe Neon Sign Co.,* 13 AD2d 625). In any event, the principle relates to situations involving persons with a significant, visible disability or handicap and who, by reason of either sickness, age or physical infirmity, require particular attention or consideration. It does not apply to a person in the position of plaintiff who appears to be heavy. While no issue was raised at trial as to whether

plaintiff required special attention by reason of her overweight condition, it is noteworthy that her daughter had boarded the train ahead of her, obviously indicating her view that no special care was needed. In any event, we consider the argument to be an afterthought and not preserved for appeal.

Accordingly, the judgment, Supreme Court, Bronx County (ROBERT C. WILLIAMS, J.), entered November 23, 1982, upon a jury verdict in favor of plaintiff, should be reversed, on the law, without costs or disbursements, and the complaint dismissed.

FEIN, J. (concurring). I concur in result only, solely upon the ground that the evidence is insufficient upon which to find that the defendant created or had the requisite actual or constructive notice of the presence of the alleged slippery or foreign substance on the station platform (*Donohoe v Great Atlantic & Pacific Tea Co.*, 277 App Div 739, 741; *Boettcher v Dowling*, 243 App Div 397, affd 270 NY 557), or that because of plaintiff's alleged obesity she requested or required assistance in boarding the train. (See *Sheridan v Brooklyn City & Newtown R. R. Co.*, 36 NY 39.)

Ross and CARRO, JJ., concur with KASSAL, J.; SANDLER, J. P., and FEIN, J., concur in an opinion by FEIN, J.

Judgment, Supreme Court, Bronx County, entered on November 23, 1982, unanimously reversed, on the law, without costs and disbursements, and the complaint dismissed.