Joanne VELSINI and Louis Velsini, Plaintiffs,

v.

Elizabeth CADMUS, Defendant.

Elizabeth CADMUS, Third-party Plaintiff,

v.

UNITED STATES of America, Third-party Defendant.

No. 92–CV–1550.

United States District Court, N.D. New York.

Jan. 11, 1994.

Michael R. Forcier, Westport, NY, for plaintiffs.

Stafford, Trombley, Purcell, Lahtinen, Owens & Curtin (Edward J. Trombley, of counsel), Plattsburgh, NY, for defendant and third-party plaintiff.

Gary L. Sharpe, U.S. Atty., N.D.N.Y. (James C. Woods, Asst. U.S. Atty.), Syracuse, NY, for third-party defendant.

## MEMORANDUM–DECISION and ORDER

HURD, United States Magistrate Judge.

### I. INTRODUCTION.

This action is the result of an accident which occurred on May 11, 1989, when the plaintiff, JoAnne Velsini, allegedly slipped and fell on premises owned by the defendant, Elizabeth Cadmus ("Cadmus"), and leased in part to the third-party defendant, United States of America ("United States"), for the purpose of operating a post office. She sustained certain personal injuries as a result of the fall.

Suit was commenced on June 10, 1991, by plaintiff and her husband, Louis Velsini, in the New York State Supreme Court—Essex County, for the damages allegedly caused by the negligence of Cadmus. No administrative claim was made against the postal service, nor did plaintiff[1] name the United States or the Postmaster General as party defendants. On August 26, 1992, Cadmus commenced a third-party action against the United States. The action was then removed from State Supreme Court to the United States District Court for the Northern Dis-

---

**1.** Use of the word plaintiff is meant to include both JoAnne Velsini's claim, as well as her hus- band's derivative claim.

trict of New York, pursuant to 28 U.S.C. §§ 1331 and 1441(a).

Cadmus has moved for summary judgment pursuant to Fed.R.Civ.P. 56. The United States has joined in that motion. Plaintiff opposes the motion, and oral argument was held on November 12, 1993.

## II. *SUMMARY JUDGMENT.*

A motion for summary judgment may be granted only when the moving party carries its burden of showing the absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Goldman, Antonetti, Ferraiuoli, Axtmayer & Hertell, Partnership v. Medfit Int'l, Inc.,* 982 F.2d 686, 689 (1st Cir.1993); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* In other words, a motion for summary judgment pursuant to Fed.R.Civ.P. 56 shall be granted only when the pleadings, evidence obtained through discovery, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). Therefore, "summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Thus, if the nonmoving party can not produce sufficient evidence to support the jury verdict, summary judgment is proper. *Id.* at 249. "In determining how a reasonable jury would decide, the Court must resolve all ambiguities and draw all inferences against the moving party." *Lang,* 949 F.2d at 580. However, when the moving party has met the burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith*

*Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Liberty Lobby,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. At that point, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* "The judge's function is not to weigh the evidence and determine the truth of the matter," *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2511, "such is the prerogative of the finder of fact." *Murphy v. Provident Mutual Life Ins. Co.,* 923 F.2d 923, 930 (2d Cir.1990) (Kearse, J., dissenting), *cert. denied,* —— U.S. ——, 112 S.Ct. 65, 116 L.Ed.2d 40 (1991). The judge's role, then, is "to determine whether there does indeed exist a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2511.

Additionally, the courts of New York have consistently warned against granting a summary judgment motion because "negligence cases by their nature do not usually lend themselves to summary judgment," *Ugarriza v. Schmieder,* 46 N.Y.2d 471, 474, 386 N.E.2d 1324, 1325, 414 N.Y.S.2d 304, 305 (1979), for "even when the facts are conceded, there is often a question as to whether the defendant or the plaintiff acted reasonably under the circumstances[, an issue which] can rarely be decided as a matter of law." *Lugo by Lopez v. LJN Toys Ltd.,* 146 A.D.2d 168, 170, 539 N.Y.S.2d 922, 923–24 (1st Dept.1989) (*quoting Andre v. Pomeroy,* 35 N.Y.2d 361, 364, 320 N.E.2d 853, 854–55, 362 N.Y.S.2d 131, 133 (1974)), *aff'd,* 75 N.Y.2d 850, 552 N.E.2d 162, 552 N.Y.S.2d 914 (1990).

## III. `FACTS.`

Cadmus and the United States are parties to a written lease agreement for a room on the ground floor of the Cadmus residential premises located in Moriah Center, New York. This room has been leased to the United States for use as a post office since 1973. The lease is silent regarding the specific maintenance duties of the respective parties,[2] but as a matter of practice the United States has maintained the driveway and the entrance to the post office. Howev-

---

**2.** There is, however, a general clause which states that, except for damage resulting from the negligence of the lessee, Cadmus is responsible

for maintaining the premises in good repair and tenantable condition. (Affidavit of Joanne Velsini, Ex. "B").

er, Cadmus has on several occasions called the County Highway Department to assist her in filling potholes in the driveway. (Deposition of Elizabeth Cadmus, at 11). She lives in the portion of the house that is not leased to the United States, and in fact, the entrance to her garage is within two to three feet of the post office entrance.

A few months prior to the accident, the postmistress placed two mats in front of the entrance to the post office immediately beneath a cement step. These mats were conveyor belts discarded from a nearby mining company, and were not manufactured or designed for use as entranceway mats. The mats were somewhat irregular in shape. Prior to the accident, the plaintiff visited the post office two or three times a week and never slipped while using the mats. There is no evidence of anyone slipping or falling on the mats prior to the plaintiff's accident. There is also no evidence that there were ever any complaints to the postmistress or anyone else, including Cadmus, that the mats were dangerous.

It had rained the night prior to plaintiff's accident, and the air was still misty at about 9:20 A.M. on May 11, 1989. There is no evidence of any stones or debris on the mats at that time, however, the mats were wet. The plaintiff was with her granddaughter. At her deposition, plaintiff testified that as she exited, "I walked out of the post office, and after I stepped down off the concrete slab onto the mat, I slid on the mat." (Deposition of JoAnne Velsini, at 8). She fell and sustained a fracture to her right ankle.

## IV. *DISCUSSION.*

■ Pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.,* the United States has waived sovereign immunity from suit for claims of property damage or personal injury caused by the "negligent or wrongful act or omission" of its employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b) (1982); *United States v. Muniz,* 374 U.S. 150, 153, 83 S.Ct. 1850, 1853, 10 L.Ed.2d 805 (1963); *Hurwitz*

*v. United States,* 884 F.2d 684, 686 (2d Cir. 1989), *cert. denied,* 493 U.S. 1056 (1990); *Guccione v. United States,* 847 F.2d 1031, 1033 (2d Cir.1988), *reh'g denied,* 878 F.2d 32 (2d Cir.1989), *cert. denied,* 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990); *Avakian v. United States,* 739 F.Supp. 724, 730 (N.D.N.Y.1990). However, since the United States is only a third-party defendant, if the complaint is dismissed against Cadmus, the third-party action is extinguished unless permission is granted to amend the complaint to add the United States as a party defendant. Fed.R.Civ.P. 14; *Blais Constr. Co. v. Hanover Square Associates–I,* 733 F.Supp. 149, 152 (N.D.N.Y.1990); *Hanko v. United States,* 583 F.Supp. 1280, 1284 (W.D.Pa.1984), *aff'd, Hanko v. United States,* 749 F.2d 26 (3d Cir.1984), *aff'd, United States v. Sherbondy,* 749 F.2d 29 (3d Cir.1984).

■ The alleged negligent acts occurred in New York, so the law of New York is controlling. 28 U.S.C. §§ 1346(b) & 2674; *Hurwitz,* 884 F.2d at 686. In New York, the present standard of care owed by a landowner to someone lawfully on the premises consists of a single standard of care, that is, a duty to exercise reasonable care under the circumstances in maintaining its property in a safe condition whereby foreseeability is the measure of liability. *Basso v. Miller,* 40 N.Y.2d 233, 241, 352 N.E.2d 868, 872, 386 N.Y.S.2d 564, 568 (1976); *Scurti v. City of New York,* 40 N.Y.2d 433, 434, 354 N.E.2d 794, 795, 387 N.Y.S.2d 55, 56 (1976); *Bartolomeo v. Evangel Church of God,* 169 A.D.2d 696, 697, 564 N.Y.S.2d 184, 185 (2d Dept. 1991). A landowner has a duty to maintain the premises in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk of injury. *Basso,* 40 N.Y.2d at 241, 352 N.E.2d at 872, 386 N.Y.S.2d at 568; *Gordon v. American Museum of Natural History,* 113 A.D.2d 701, 703, 493 N.Y.S.2d ·464, 466 (1st Dept.1985), *rev'd on other grounds,* 67 N.Y.2d 836, 492 N.E.2d 774, 501 N.Y.S.2d 646 (1986).

■ To prove negligence on the part of Cadmus, plaintiff must establish that there was a dangerous condition, and that either

Cadmus affirmatively created the dangerous condition or had notice, actual or constructive, of same. *Lowrey v. Cumberland Farms, Inc.,* 162 A.D.2d 777, 778, 557 N.Y.S.2d 689, 690 (3d Dept.1990); *Edwards v. Terryville Meat Co.,* 178 A.D.2d 580, 580, 577 N.Y.S.2d 477, 478 (2d Dept.1991). Plaintiff must also prove that after knowledge or notice was acquired, Cadmus had a reasonable opportunity to correct the dangerous condition. *Putnam v. Stout,* 38 N.Y.2d 607, 612, 345 N.E.2d 319, 321, 381 N.Y.S.2d 848, 850 (1976); *Doyle v. Streifer,* 34 A.D.2d 183, 185, 310 N.Y.S.2d 165, 167 (3d Dept.1970). In other words, there must be evidence tending to show the existence of a dangerous condition, that Cadmus either created the condition or had actual or constructive knowledge of said condition, and that she failed to correct the condition within a reasonable time after acquiring such knowledge. *Lowrey,* 162 A.D.2d at 778, 557 N.Y.S.2d at 691; *Torri v. Big V of Kingston, Inc.,* 147 A.D.2d 743, 744–45, 537 N.Y.S.2d 629, 630–31 (3d Dept.1989); *Payne v. Big V Supermarkets, Inc.,* 140 A.D.2d 422, 423, 528 N.Y.S.2d 123, 124 (2d Dept.1988); *Lewis v. Metropolitan Transp. Authority,* 99 A.D.2d 246, 249, 472 N.Y.S.2d 368, 371 (1st Dept.1984), *aff'd,* 64 N.Y.2d 670, 474 N.E.2d 612, 485 N.Y.S.2d 252 (1984).

■ In the case of a landowner/lessor who did not create, maintain, or otherwise participate in the negligent act, it is well settled that such an owner is generally not liable for negligent acts of the tenant unless he retained control of the premises or was contractually obligated to repair unsafe conditions. *Suarez v. Skateland Presents Laces, Inc.,* 187 A.D.2d 500, 501, 589 N.Y.S.2d 608, 609 (2d Dept.1992) (citations omitted). Thus, where an out-of-possession lessor had no contractual obligation to repair any unsafe condition on the property, summary judgment was properly granted against an employee of the lessee's gas station who broke his ankle

when he stepped into a pothole. *Lafleur v. Power Test Realty Co. Ltd. Partnership,* 159 A.D.2d 691, 692, 553 N.Y.S.2d 50, 51 (2d Dept.1990). However, where there was a question of fact as to whether the owner was responsible for repairing cracks in the pavement, summary judgement was properly denied. *Edwards v. Getty Petroleum Corp.,* 172 A.D.2d 715, 569 N.Y.S.2d 104 (2d Dept. 1991); *DeMarco v. Bansal,* 826 F.Supp. 785, 787 (S.D.N.Y.1993) (A landlord can not avoid liability based on his failure to exercise his right of re-entry when a dangerous condition is visible and long-standing.)

In the case at bar, Cadmus did not release either possession or control of the area where the plaintiff fell. As noted above, the lease obligates Cadmus to maintain the premises in tenantable condition, and such an obligation "may be deemed to be a sufficient retention of control which, with constructive notice of the complained of condition, could subject the lessor to liability." *Id.* at 716, 569 N.Y.S.2d at 105; *Hecht v. Vanderbilt Associates,* 141 A.D.2d 696, 699, 529 N.Y.S.2d 818, 820 (2d Dept.1988).[3] Moreover, the accident did not occur within the room leased by Cadmus to the United States, which would have been under the exclusive possession and control of the United States. The accident occurred in an outside common area used both by patrons of the post office and Cadmus herself. *Batton v. Elghanayan,* 43 N.Y.2d 898, 900, 374 N.E.2d 611, 612, 403 N.Y.S.2d 717, 718–19 (1978) (Cook, J., dissenting) (Liability may be imposed upon a landlord for dangerous conditions existing in common areas over which the landlord retained control, provided that the landlord had notice of said condition.)

■ Since Cadmus lived on the premises, she did not completely relinquish possession over the outside area in question; this is demonstrated by the fact that on occasion

---

**3.** While the holding in *Lafleur,* 159 A.D.2d at 692, 553 N.Y.S.2d at 51, that a right retained by an out-of-possession lessor to enter the premises in order to make repairs is insufficient to retain control over the premises, seems at first to be inconsistent with *Edwards,* it is not. In *Lafleur,* the lessee was contractual obligated in the first instance to make all necessary repairs, while the

lessor retained a secondary right to enter the premises and make repairs not completed by the lessee. In both *Edwards* and the case at bar, however, the lessor retained the primary obligation to maintain the premises in good condition, while the lessee possessed the secondary right to make necessary repairs at the expense of the lessor.

she arranged for the repair of potholes in the driveway which she and post office patrons commonly used (Cadmus Dep. at 11). *Haner v. De Vito,* 152 A.D.2d 896, 897, 544 N.Y.S.2d 90, 91 (3d Dept.1989) (Proof of control over the premises "can be shown by a landlord's course of conduct that establishes that he undertook the responsibility of maintaining the area at issue.") Cadmus, as lessor of the property, can not avoid liability simply by ignoring a potentially dangerous condition, especially one which she passes each and every day as she enters and exits the post office. Therefore, the law with respect to an out-of-possession owner is not applicable to this case.

■ The sole issue then becomes whether the plaintiff has raised a question of fact as to whether Cadmus, as the owner of the premises, created or had either actual or constructive notice of the alleged dangerous condition, and then failed to correct the condition in a reasonable time after learning of said condition. Whether the use of abandoned conveyor belts as entrance mats was negligent, and whether these conveyor belt/mats created a danger on the premises is an issue to be decided by the trier of fact.[4] There also exist the factual issues of whether a dangerous condition existed when the conveyor belt/mats became wet, and if such condition was a proximate cause of the plaintiff's accident and the injuries resulting therefrom.[5] As a result, whether Cadmus had notice, actual or constructive, of the alleged dangerous condition is the issue for the court to decide on this motion.

■ Cadmus did not create the condition. The conveyor belts were obtained and placed by the United States. Cadmus had no actual knowledge or notice that the entrance mats were formerly used as conveyor belts. The irregular shape of the two conveyor belt/mats is obvious, but this would be insufficient to place the defendant on notice that the mats were originally conveyor belts, or were dangerous to use as entrance mats. Also, there is no claim that the shape of the mats caused or contributed to the plaintiff's accident.

Furthermore, no evidence has been presented to demonstrate that Cadmus had any actual knowledge or notice that the mats became slippery and dangerous when wet. Although it is obvious that the mats must have become wet on a number of occasions during the few months they were in place prior to the plaintiff's fall, there were no prior accidents as a result of any slips and falls on the mats. The plaintiff nor anyone else ever complained about the mats in either a dry or wet condition. Finally, there is no showing that Cadmus had actual knowledge that the mats were wet on the date of the accident, or that she had any time to remedy the situation. Accordingly, as plaintiff has failed to show that Cadmus possessed actual notice of any dangerous condition, it is incumbent upon her to raise a triable issue of fact which would show that Cadmus had constructive notice of said condition.

■ "To constitute constructive notice, a defect must be *visible and apparent* and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it," *Gordon,* 67 N.Y.2d at 837, 492 N.E.2d at 775, 501 N.Y.S.2d at 647 (emphasis added); *Stoerzinger v. Big V Supermarkets,* 188 A.D.2d 790, 790, 591 N.Y.S.2d 257, 257 (3d Dept. 1992), or must have existed for so long that the defendant is presumed to have seen the dangerous condition, or to have been negligent in failing to see said condition. *Lewis,* 99 A.D.2d at 249, 472 N.Y.S.2d at 371.

The plaintiff, therefore, argues that a dangerous condition was created by using conveyor belts as mats; that such condition was "visible and apparent"; that said condition had existed for several months; and that since the defendant lived on the premises and entered the post office on a daily basis (Cadmus Dep. at 7), constructive notice has been established. In support of this position, the plaintiff quotes *Black's Law Dictionary* 96, 1571 (6th ed. 1990), ·which defines *appar-*

---

4. It should be noted that plaintiff did not present any expert witness affidavits to establish that the conveyor belts were dangerous or defective when used as entrance mats.

5. Again, no expert witness affidavits were submitted to establish this fact. At this stage of the proceedings, the court is giving the plaintiff the benefit of the doubt.

*ent* as, "That which appears to the eye or mind, open to view, plain, patent"; and *visible* as, "Perceptible, discernible, clear, distinctive, evident, open, conspicuous." The photographs submitted by plaintiff, which may be used to prove constructive notice, *Kniffin v. Thruway Food Markets, Inc.*, 177 A.D.2d 920, 921, 576 N.Y.S.2d 678, 678 (3d Dept.1991), do show the mats, their placement and condition at the time of the accident.

As a resident living on the premises and entering the post office on a daily basis, the trier of fact could properly conclude that Cadmus had knowledge of the danger since she must have seen the conveyor belt/mats in a wet condition on prior occasions. Additionally, it is for a jury, not the court, to decide if this resulted in a dangerous condition that was "visible and apparent", thus putting Cadmus on constructive notice that would require her to either remedy the condition or notify the United States to do so.

Although Cadmus neither created nor maintained the alleged dangerous condition, and did not have actual notice of said condition, the plaintiff has raised a question of fact for the jury to decide; namely, whether Cadmus had constructive notice of any dangerous condition that was otherwise visible and apparent.

At trial, plaintiff must convince a jury that: (1) it was negligent to use conveyor belts as entrance mats; (2) the conveyor belt/mats created a dangerous condition; (3) defendant had timely constructive notice of the dangerous condition and failed to take steps to remedy the condition; and (4) the dangerous condition was a proximate cause of her accident and injury. The submissions on this motion present a very weak case for the plaintiff against Cadmus, and may still be subject to dismissal at the close of her case at trial. However, for the purposes of this motion, viewing all of the evidence in the light most favorable to the plaintiff, as the court must, the essential elements of her

case can be stated against Cadmus, and the motion must be denied.

The real culprit, if any, appears to be the United States. The United States has moved to dismiss plaintiff's third party action in the event that the court grants defendant's motion for summary judgment. Having determined that issues of fact remain, the United States' motion to dismiss is denied.

If plaintiffs did move the court for leave to amend their complaint to include the United States as a defendant, the motion would be governed by Fed.R.Civ.P. 15. In addition, since the statute of limitations has expired,[6] the United States could be added as a party only if plaintiff satisfies the requirements of Rule 15(c). *Scharrer v. Consolidated Rail Corp.*, 792 F.Supp. 170, 172–73 (D.Conn. 1992). Under the 1991 amendment to Rule 15(c), a plaintiff is allowed to change a party or name additional parties only if:

(1) the claim arose of the same conduct or transaction; and

(2) within 120 days, the party to be named or added has received notice of the original institution of the complaint; and

(3) the party to be named or added knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it.

Fed.R.Civ.P. 15(c); *Aslanidis v. United States Lines Inc.*, 7 F.3d 1067, 1075–76 (2d Cir.1993). Under such circumstances, the amended pleading would relate back to the date of the original complaint.

In the present case, the incident took place on May 11, 1989; action against Cadmus was filed on June 10, 1991; and the United States was impleaded on August 26, 1992. Because there is no showing at this time that the United States had notice within 120 days of the commencement of the action, Rule 15(c) would not permit the adding or renaming of the United States as a defendant to relate back to the date of the original

---

**6.** Pursuant to 28 U.S.C. § 2401(b), the statute of limitations under the Federal Tort Claims Act is two years.

action.[7] Therefore, a motion to amend would have to be denied.

Therefore, it is

ORDERED, that the defendant's and the third-party defendant's motions for summary judgment are denied.

IT IS SO ORDERED.

---

**7.** Moreover, Rule 15(c) permits an amendment of a pleading only where there has been a mistake concerning the identity of the proper party or "where there exists a possibility that the plaintiff may have made a mistake in selecting the original defendants." *Koal Industries Corp. v. Asland, S.A.,* 808 F.Supp. 1143, 1157 (S.D.N.Y.1992) (citations omitted). Plaintiff herein did not mistakenly identify the wrong party to be sued; on the contrary, Cadmus is one of two proper parties.