■ RAYMOND MERCER et al., Respondents, v CITY OF NEW YORK, Appellant. [637 NYS2d 456] —In an action to recover damages for personal injuries, etc., the defendant appeals from a judgment of the Supreme Court, Kings County (Jackson, J., at liability trial; Bernstein, J., at damages trial), dated July 2, 1993, which is in favor of the plaintiffs and against it in the principal sum of $29,000.

Ordered that the judgment is reversed, on the law, with costs, and the complaint is dismissed.

The plaintiff Raymond Mercer was allegedly injured when he slipped and fell in a large puddle of grease which had accumulated on the floor of a garage facility owned and operated by the New York City Department of Sanitation. On appeal the defendant contends that the plaintiffs failed to establish a prima facie case of negligence and that the judgment in their favor must, therefore, be reversed. We agree.

The testimony presented at trial establishes that on the morning of March 21, 1989, the plaintiff Raymond Mercer was employed as a dump truck driver by the New York City Department of Sanitation. At about 6:45 that morning, Mercer reported to a Sanitation Department garage located at Ralph Avenue in Brooklyn to begin a 7:00 A.M. to 3:00 P.M. shift. Upon reaching his locker, Mercer realized that he had left his wallet in his car and he returned outside to retrieve it. Mercer then rushed back inside the garage to report for roll call and allegedly slipped and fell on a large puddle of grease located near the back door. Mercer described the grease patch as about five feet in length and about a car's length in width. There were no witnesses to the accident and no one but the injured plaintiff ever saw the puddle of grease which purportedly caused his fall.

The record further reveals that the Department of Sanitation used the Ralph Avenue garage to store approximately 44 vehicles, including dump trucks and front-end loaders, and that service and maintenance work with grease and oil was frequently performed on these vehicles. Moreover, the supervisor of the garage, Michael Gennardo, admitted that "[a]s a rule", oil would leak from the parked vehicles overnight and, thus, the garage floor had to be cleaned every morning after the vehicles pulled out of the garage for the day, which customarily occurred at 7:30 A.M. During the morning cleaning, salt and sand would be spread on the floor to absorb oil and

grease, and would then be swept up. Explaining why the clean-up was not done until 7:30 A.M., Gennardo noted that the garage floor could not be properly cleaned while the vehicles were parked inside. Gennardo further maintained that a grease patch of the size which allegedly caused Mercer's fall would only exist at locations where a vehicle was being serviced by mechanics, who cleaned up any resulting spills upon completing their work.

The court denied the defendant's motion, made at the end of the plaintiffs' case, to dismiss the complaint for failure to establish a prima facie case. At the conclusion of the liability phase of the trial, the jury returned a verdict finding the defendant 75% at fault in the happening of the accident. The defendant now urges this Court to reverse the liability verdict and dismiss the complaint, contending that the plaintiffs failed to establish a prima facie case of negligence. The defendant argues that there was no evidence that it had actual or constructive notice of the large puddle of grease which allegedly caused Raymond Mercer's fall, and, consequently, that there was no evidentiary basis upon which the jury could have reasonably inferred that this particular condition had been present on the floor for a sufficient length of time to have required the defendant to have remedied it prior to the commencement of the 7:00 A.M. to 3:00 P.M. shift. In reply, the plaintiffs assert that notice of the existence of the puddle of grease was not required because Gennardo's admission that the parked Sanitation Department vehicles generally leaked oil and grease overnight was sufficient to demonstrate that the defendant created the dangerous condition which caused Raymond Mercer's accident. We agree with the defendant's contention that the facts of this case, even when viewed in the light most favorable to the plaintiffs, are insufficient to establish any negligence on the part of the defendant.

It is well settled that the existence of a patch of oil or a slippery foreign substance on a floor does not, in and of itself, give rise to a cause of action sounding in negligence (see, Lewis v Metropolitan Transp. Auth., 99 AD2d 246, 250, affd 64 NY2d 670, 671). To the contrary, the plaintiff must establish that the oil or foreign substance was present "under circumstances sufficient to charge the defendant with responsibility therefor; in other words, to prove either that defendant had knowledge of the alleged dangerous condition, either actual or constructive, or that it caused the condition to be created by its own affirmative act" (Lewis v Metropolitan Transp. Auth., supra, at 250, quoting Donohoe v Great Atl. & Pac. Tea Co., 277 App Div 739,

741). Accordingly, "[e]xcept in cases where the defendant created the condition, thus constituting actual notice to establish a prima facie case, a plaintiff must prove actual or constructive notice of the dangerous or defective condition and a reasonable time within which to correct or warn about its existence" (*Lewis v Metropolitan Transp. Auth., supra,* at 249).

The requirement that actual or constructive notice be given serves to ensure that the property owner has a sufficient opportunity, within the exercise of reasonable care, to remedy the situation (*see, Madrid v City of New York,* 42 NY2d 1039; *Lewis v Metropolitan Transp. Auth., supra*). However, an examination of the evidence here fails to demonstrate that such notice was given. Although the plaintiffs assert that the defendant created the dangerous condition which caused Raymond Mercer's fall, and thus had actual notice of its existence, no proof that the defendant created the grease puddle through the affirmative acts of its employees was presented. To the contrary, Gennardo's uncontradicted testimony showed that large grease spots of the type which caused Raymond Mercer's fall would be created only when service or maintenance work was performed on the vehicles. Yet, the record contains no indication that such work was performed near the time of the plaintiff's fall, and it is undisputed that the mechanics who performed service and maintenance work ordinarily cleaned up the oil and grease spills caused by this work. Furthermore, the fact that the vehicles stored in the garage regularly leaked oil overnight does not establish that the defendant created the large puddle of grease which caused Raymond Mercer's fall. In fact, at best the record merely supports the conclusion that leaked oil would accumulate underneath the vehicles at night and that the resulting oil and grease spots would be cleaned up after the vehicles were taken out of the garage for the day. Accordingly, we cannot find that Gennardo's admission that the vehicles leaked oil overnight establishes that the defendant affirmatively created the large puddle of grease described by the plaintiff.

Turning next to the issue of constructive notice, it is well settled that such notice exists only where a defect is visible and apparent, and has been present for a sufficient length of time prior to the accident to permit the defendant's employees to discover and remedy it (*see, Gordon v American Museum of Natural History,* 67 NY2d 836). At bar, however, Raymond Mercer admitted that despite his clear view of the garage floor, he did not see the large puddle of grease prior to his fall and, indeed, no other Sanitation Department employee saw the

grease puddle even after Mercer's fall. It cannot, therefore, be inferred that the grease puddle existed for a sufficient period of time to enable the garage's cleaning crew to discover it and remove it prior to the start of the 7:00 A.M. shift. Although the plaintiffs alternatively argue that constructive notice was established because the oil and grease spots on the floor of the garage were a recurring condition, the plaintiffs have not demonstrated that the puddle of oil which caused Raymond Mercer's fall was formed by the overnight leaking of the Sanitation Department vehicles. Moreover, it is well settled that a general awareness that a dangerous condition, such as grease and oil on a garage floor, may be present, is legally insufficient to constitute notice of the particular condition which caused Raymond Mercer's fall (see, Piacquadio v Recine Realty Corp., 84 NY2d 967; Gordon v American Museum of Natural History, supra, at 838). Thus, in the absence of any evidence of the origin of the patch of grease upon which the plaintiff allegedly slipped, or proof that it existed for a sufficient length of time to afford the defendant an opportunity to remove it, a finding that the defendant had constructive notice would be pure speculation (see, Simmons v Metropolitan Life Ins. Co., 84 NY2d 972).

Finally, we note that even if the record contained legally sufficient evidence of notice, the imposition of liability upon the defendant in these circumstances would be inappropriate. Here, the very purpose of the Ralph Avenue garage was to store and maintain large Sanitation Department trucks and vehicles, and it was normal for some oil and grease to leak from these vehicles while they were parked for the night, and while they were serviced. Under these circumstances, the existence of grease and oil spots on the garage floor was necessarily incidental to its use as a garage, and should not form a basis for the imposition of liability (see, Valdez v City of New York, 148 AD2d 697; Conroy v Saratoga Springs Auth., 284 NY 723). Moreover, the record establishes that the defendant exercised reasonable care in cleaning the garage floor after the vehicles were driven out each morning, and the defendant should not be cast in negligence for failing to ensure that all grease and oil spots were removed before its employees, who were well aware of the possibility that such spots could be on the floor, reported for the early morning shift. Mangano, P. J., O'Brien and Krausman, JJ., concur.

Pizzuto, J., dissents and votes to affirm the judgment appealed from, with the following memorandum, in which Copertino, J., concurs. I do not agree with the majority's conclusion

that the plaintiffs failed to establish a prima facie case of negligence. Accordingly, I respectfully dissent.

The evidence presented at trial by the plaintiff Raymond Mercer, a dump truck driver for the New York City Department of Sanitation, indicated that on March 21, 1989, he was reporting for 7:00 A.M. roll call when he slipped and fell in a large pool of oil or grease situated on the floor of a garage facility owned and operated by the Sanitation Department. The subject garage facility housed about 44 vehicles, including garbage trucks and dump trucks. These vehicles were given oil and grease service in the garage and it was established through the testimony of Mercer's supervisor that they had "very big engines" which "had a lot of oil in them". In addition, it was established that servicing the vehicles resulted in oil or grease pools which would be cleaned up by the mechanics. The plaintiff presented no direct evidence regarding how this particular pool of oil or grease was formed or how long it had been present. However, Mercer's supervisor stated that "[a]s a rule", oil leaked from the vehicles parked overnight in the garage. Consequently, "[i]n the morning when [the supervisor] came in [the supervisor] would have people clean up the oil" by putting sand and salt on the floor and sweeping it up. The supervisor further testified that the "garage floor always had oil and grease on it from the drippings of some of the trucks". Moreover, the supervisor reiterated that "there was always grease patches on the floor from when the vehicles dripped oil".

These foregoing facts, established by the plaintiffs on their direct case, were sufficient to permit a jury to rationally infer that the subject oil or grease patch was created by the defendant, in that it either leaked from a vehicle owned by the defendant or was caused by the oil or grease service performed by the defendant's employees. Consequently, in order to establish a prima facie case, the plaintiffs were not required to prove that the defendant had actual or constructive notice of the dangerous condition (*see, Lewis v Metropolitan Transp. Auth.*, 99 AD2d 246, 250, *affd* 64 NY2d 670).

In any event, the plaintiffs' evidence was sufficient to permit a jury to rationally infer that the defendant had actual knowledge of a recurring, hazardous condition in the form of oil and grease patches on the floor of the garage facility (*see, Hirschman v City of New York*, 193 AD2d 581, 582; *Morales v Jolee Consolidators*, 173 AD2d 315, 316; *Weisenthal v Pickman*, 153 AD2d 849, 851). Under such circumstances, the defendant should be charged with constructive notice of each specific reoccurrence of the condition (*see, Morales v Jolee Consolida-*

*tors, supra; Weisenthal v Pickman, supra*), including the condition which caused Raymond Mercer's injuries.

Finally, contrary to the viewpoint espoused by our colleagues in the majority, pools of oil or grease lying on the floor of a vehicle maintenance and storage facility are not "necessarily incidental" to its use in the same manner as water lying on the ledge of a swimming pool (*cf., Valdez v City of New York,* 148 AD2d 697, 698), or on the floor of a bath house (*cf., Conroy v Saratoga Springs Auth.,* 284 NY 723). To this end, it must be stressed that Raymond Mercer was not traversing a grease pit or other area where oil and grease service was being performed, but rather had just entered an exterior door when he fell.