**Renee RILEY, Plaintiff–Appellant,**

v.

**BATTERY PLACE CAR PARK, DeMatteis Battery Park Associates, R.Y. Management Co. and GGMC, LLC Defendants/Appellees.**

**No. 06–2368–cv.**

United States Court of Appeals, Second Circuit.

Dec. 21, 2006.

Anna J. Ervolina, Morris, Duffy, Alonso & Faley, New York, NY, for Appellee.

Gerald H. Baker, Baker, Garber, Duffy & Pedersen, Hoboken, NJ, for Appellant.

PRESENT: Hon. SONIA SOTOMAYOR, Hon. B. D. PARKER, Circuit Judges, and Hon. MARK R. KRAVITZ, District Judge.*

### SUMMARY ORDER

Plaintiff-appellant Renee Riley appeals from an April 27, 2006 judgment of the district court, granting summary judgment to defendants-appellees on Riley's negligence claim arising from her slip and fall on a ramp in defendants' parking garage on the evening of July 5, 2001.[1] We as-

---

\* The Honorable Mark R. Kravitz of the United States District Court for the District of Connecticut, sitting by designation.

1. Defendant Battery Place Car Park leased the parking garage from defendant DeMatteis Battery Park Associates; defendant R.Y. Man-

agement was the building manager of the garage, and defendant GGMC Parking hired the parking attendants, supervised operations, parked vehicles, and collected revenues in the garage.

sume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

To make out a prima facie case of negligence in a slip and fall case, the plaintiff must prove "either that defendant had knowledge of the alleged dangerous condition, either actual or constructive, or that it caused the condition to be created by its own affirmative act." *Mercer v. City of New York*, 223 A.D.2d 688, 637 N.Y.S.2d 456, 458 (2d Dep't 1996) (internal quotation marks omitted). We agree with the district court that Riley failed to create a genuine issue of material fact as to whether defendants had either actual or constructive notice of the offending oil patch. Defendants offered clear and unchallenged proof that neither they nor their employees had actual notice of the oil patch before the accident. The parking attendant testified that he "did not see oil on the ramp at any time before ... [Riley's] accident occurred," and, indeed, despite passing the oil patch twice before slipping on it, Riley herself testified that she did not see it until after she fell.

"To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Natural History*, 67 N.Y.2d 836, 837–38, 501 N.Y.S.2d 646, 492 N.E.2d 774 (1986). Here, Riley's failure to show that the oil was visible or that it existed before defendants' employee parked the last two cars on the car ramp leaves no issues of material fact with regard to defendants' constructive notice of the oil patch.

Nor does Riley raise an issue of material fact with regard to constructive notice by arguing that defendants knew about occasional oil leakage from parked cars. Riley cites *Weisenthal v. Pickman*, 153 A.D.2d 849, 545 N.Y.S.2d 369, 371 (2d Dep't 1989), for the contention that "[w]hen a landowner has actual knowledge of the tendency of a particular dangerous condition to reoccur, he is charged with constructive notice of each specific reoccurrence of that condition." However, unlike the plaintiffs in *Weisenthal* and other recurrent condition cases cited by Riley, who alleged the regular recurrence of hazards in distinctly identifiable areas, Riley offered no evidence that oil leakage was a recurring condition on the ramp where she slipped. The record at most establishes that defendants had a "general awareness" of oil leaks by parked cars on its premises, which, without more, is legally insufficient to support a finding that the owner had constructive notice of the specific oil patch that caused Riley to slip and fall. *Gordon*, 67 N.Y.2d at 838, 501 N.Y.S.2d 646, 492 N.E.2d 774; *see also Piacquadio v. Recine Realty Corp.*, 84 N.Y.2d 967, 969, 622 N.Y.S.2d 493, 646 N.E.2d 795 (1994); *Snyder v. Golub Corp.*, 199 A.D.2d 776, 605 N.Y.S.2d 166, 167 (3d Dep't 1993).

In addition, Riley argues that defendants are liable because the act of parking cars affirmatively created the oil patch on the ramp. For the reasons discussed in *Mercer*, we reject this argument. *See* 637 N.Y.S.2d at 458. Defendants' parking of the vehicles under their care cannot be said affirmatively to create the oil patches occasionally formed during the course of car storage. To hold otherwise would render defendants liable for every oil leak on their premises, regardless of the particular leak's reasonable foreseeability or prior duration.

Riley also argues that summary judgment is inappropriate here because ques-

tions of fact exist as to defendants' maintenance of their premises in a reasonably safe condition. To the extent she posits this argument as a separate theory of liability, we note that the cases she cites to support this argument merely set forth a general duty of care of which the negligence standard that we and the district court apply represents a specific application. Her argument thus does not set forth an additional theory of liability.[2] Insofar as Riley makes the separate argument that, beyond the oil patch, defendants' premises were generally or systematically unsafe, that contention fails because she offers no evidence independent of the oil patch to substantiate it.

Accordingly, for the reasons set forth above, the judgment of the District Court is hereby AFFIRMED.

---

**2.** Riley also suggests that defendants had a heightened duty to inspect the ramp because they invited the participation of the public in the garage's operations. This argument draws on language from *Cameron v. H.C. Bohack Co.*, 27 A.D.2d 362, 280 N.Y.S.2d 483, 486 (2d Dep't 1967), which, as Riley herself notes, relied on the common law distinction between invitee, licensee, and trespasser that was abandoned in *Basso v. Miller*, 40 N.Y.2d 233, 241, 386 N.Y.S.2d 564, 352 N.E.2d 868 (1976) in favor of a "single standard of rea-

sonable care under the circumstances whereby foreseeability ... be[came] a measure of liability." As such, this argument collapses into and is disposed of by our discussion of Riley's inability to make out a prima facie claim of negligence.

