*473 Plaintiff Antoinette Harrison slipped and fell on a patch of ice on the yellow tactile warning strip at the edge of the Pelham Bay Park subway station platform in the Bronx, fracturing her left ankle. While we believe that there was sufficient evidence presented for the jury to consider whether defendant had constructive notice of the icy condition, we find that the instruction to the jury on this issue was in error.
A common carrier is required to exercise ordinary care in maintaining a subway platform (see Lewis v Metropolitan Transp. Auth., 99 AD2d 246, 248 [1st Dept 1984], affd 64 NY2d 670 [1984]). Thus, except where the defendant created the condition, a plaintiff must prove actual or constructive notice of the dangerous or defective condition and that the defendant had “a sufficient opportunity, within the exercise of reasonable care, to remedy the situation” after receiving such notice (id. at 250; Aquino v Kuczinski, Vila & Assoc., P.C., 39 AD3d 216, 219 [1st Dept 2007]). In this case, plaintiff was required to show on its prima facie case that the icy condition was dangerous, that such condition was visible and apparent, and had existed for a sufficient length of time prior to the accident to permit the defendant’s employees to discover and remedy it (see Gordon v American Museum of Natural History, 67 NY2d 836, 837 [1986]).
Over objection and despite defendant’s request for the correct instruction, the trial court instructed the jury that it had to find that “defendant either knew about the dangerous conditions or circumstances and that would be actual notice or a reasonable person would conclude that such a condition existed, and that would be called constructive notice.” This instruction does not make it clear that in order to find constructive notice, the jury must conclude that the condition was visible and apparent, and that it existed for a sufficient length of time for defendant to have discovered it and taken curative action (see PJI 2:90, 2:111A; Lesser v Manhattan & Bronx Surface Tr. Operating Auth., 157 AD2d 352, 357 [1st Dept 1990]). While the court later instructed the jury that it also needed to find that defendant failed to use reasonable care “or had a reasonable time to remove the snow or ice but failed to do so,” this element of the instruction is not related to the court’s instructions on notice.
*474 We agree with defendant that plaintiff did not present evidence of actual notice in this case. Plaintiff did, however, present evidence on the issue of constructive notice sufficient to warrant the jury’s consideration of this issue. For that reason we remand the case to the Supreme Court for a new trial on liability.
The accident occurred on January 18, 2005 at approximately 7:45 a.m. Plaintiff testified that the icy condition was visible and apparent, and that she noticed it immediately after the accident. She stated that there was ice on the yellow dotted strip in front of the train door which caused her foot to slip. She described the icy condition as “irregular[ly] shape[d],” “dirty” and “black,” albeit “small.” Plaintiff explained that immediately after she fell she was carried by the train conductor and a passenger to a nearby bench, about six to eight feet away, from which she readily observed the ice formation on the yellow dotted strip. She also generally described the concrete platform itself as having a slushy mixture of water, ice and snow. Although defendant points to testimony that when its employees later viewed the area of the accident there was no snow or ice on the platform, these divergent accounts of whether there was a visible and apparent dangerous condition are for a jury to decide. As to whether the icy condition existed long enough for defendant to have discovered it and taken curative action, there is sufficient evidence from which a jury could reasonably reach that conclusion. While the evidence on the issue of constructive notice cannot be speculative (see Solazzo v New York City Tr. Auth., 6 NY3d 734 [2005]), it can be based upon circumstantial evidence. If the evidence permits a reasonable inference that the condition existed long enough for a defendant to have remedied it, then the issue of constructive notice should be presented to the jury (see Rodriguez v Bronx Zoo Rest., Inc., 110 AD3d 412 [1st Dept 2013]).
The subway platform was elevated, outdoors, and covered only by a slanted concrete canopy, which, as depicted in photographs, did not extend over the entire width of the platform. It nearly reached, but did not cover, the platform edge where the yellow strip on which plaintiff fell was located. At the time of the accident, plaintiff reported seeing water dripping off the canopy. Anthony Aguago, the station cleaner, testified that he had observed water dripping off the canopy onto the yellow strip “lots of times.” He affirmed that it was routine for water to drip on the platform edge whenever it rained. Although a general awareness that subway platforms become wet in inclement weather is not sufficient to establish notice of a specific *475 condition (see Solazzo at 735), a recurring known water condition will suffice (Talavera v New York City Tr. Auth., 41 AD3d 135 [1st Dept 2007]). Here there was additional evidence, including climatological data, recurrent dripping conditions and freezing temperatures on the day that immediately preceded plaintiffs accident, supporting a conclusion that the source of the icy condition was the earlier snowstorm (see Reynolds v Masonville Rod & Gun Club, 247 AD2d 682, 682 [3d Dept 1998] [“(l)acking any climatological data” the court concluded that the icy condition had not formed in time for the defendant to have remedied it]).
There are weather reports from the National Climatic Data Center, in evidence, showing that it snowed the day before the accident, on January 17, 2005, between the hours of 2:00 a.m. and 11:00 a.m. and that, thereafter, the temperatures ranged from 9 degrees to 27 degrees Fahrenheit. There was no other precipitation after that snowfall up through the time of the accident. The climatological data also showed that the weather was dry on January 15 and 16, 2005 and that the temperature for the first half of January was considerably warmer than freezing. This evidence is sufficient to raise an inference that the source of the slushy ice condition testified to by plaintiff was the snowstorm that occurred approximately 21 hours before.
The weather reports further confirm an accumulation of three tenths of an inch of snow on January 17, 2005. According to the National Climatic Data Center records, this measurable amount is more than a “trace precipitation amount” which would otherwise be denoted a “T” in the records. Although defendant urges us to conclude, as a matter of law, that there was not enough snow to have created the claimed condition, there is no scientific evidence, or any other basis in the trial record, supporting this conclusion.
Further, Mr. Augago, whose shift began within minutes of the accident, testified that when he went to the site of the accident he observed that snow melt had already been scattered about the platform. Mr. Burgos, the Transit Authority cleaner on duty before and through the time of the accident, and who presumably had direct knowledge of the platform conditions, was never produced by defendant. Snow melt is the defendant’s response to wet, cold and icy conditions on the platform. Defendant’s witness testified that there are three shifts of maintenance workers, who are assigned to clean the station within a 24-hour period. These workers’ duties include snow removal and applying snow melt. Each worker is assigned and travels to multiple stations during each of their shifts. No records or testimony was *476 produced by defendant showing what maintenance activities were actually performed by the workers assigned after the snowfall. Nor is there any record of when the defendant’s employees may have last inspected that subway platform (see Spector v Cushman & Wakefield, Inc., 87 AD3d 422 [1st Dept 2011]). Given defendant’s awareness of a recurring condition, the climatological data, and the existence of snow melt put by the Transit Authority on the platform at or about the time of the accident, a jury could reasonably conclude that the earlier snowfall and resultant dripping watery conditions, and freezing temperatures, created an icy condition on the platform and had existed for a long enough period of time to have been discovered and addressed during defendant’s routine maintenance activities (see Tamhane v Citibank, N.A., 61 AD3d 571 [1st Dept 2009]).
There is no need, however, for a retrial on the issue of damages. If on retrial the new jury finds liability, then the award of damages made by this jury should stand. Plaintiff, who was 22 at the time of the accident, was awarded $200,000 for past and $300,000 for future pain and suffering. Her injuries consisted of a comminuted bimalleolar fracture to her left ankle, resulting in two orthopedic surgeries. An award of damages should only be set aside when it deviates materially from what would be reasonable compensation (see CPLR 5501; Donlon v City of New York, 284 AD2d 13, 14 [1st Dept 2001]). The evidence adduced as to the nature, extent and permanency of plaintiff’s injuries was sufficient to support the verdict reached and was not excessive (see Alicea v City of New York, 85 AD3d 585 [1st Dept 2011]; Keating v SS&R Mgt. Co., 59 AD3d 176 [1st Dept 2009]; Rydell v Pan Am. Equities, 262 AD2d 213 [1st Dept 1999]).
Finally we reject defendant’s contention that plaintiff’s counsel’s summation was so inflammatory and prejudicial as to deprive it of a fair trial. Concur — Richter, Feinman and Gische, JJ.
Friedman, J.E, and Freedman, J., dissent in a memorandum by Freedman, J., as follows: Although I agree with the majority that the jury instruction about constructive notice misstated the law, in my opinion, plaintiff failed to establish that defendant had actual or constructive notice of the ice on which she slipped and fell and therefore, I would dismiss the case in its entirety.
At trial, plaintiff testified that, between 7:30 and 7:45 a.m. on January 18, 2005, she slipped on a small, shallow patch of ice between the raised bumps on the yellow safety strip running along the edge of defendant’s outdoor subway platform. Plaintiff *477 did not see the ice before she fell but testified that she observed it when sitting nearby after the accident. Although she stated that there was a “mushy” mixture of water, ice, and snow on the platform, and that water and ice dripped from the station’s concrete canopy, a station supervisor who arrived shortly after the accident testified that there was no ice or slush on the platform for defendant to remove.
Weather records put into evidence indicate that, on the day before plaintiffs accident, the temperature ranged from 18 to 27 degrees Fahrenheit, and the next day it ranged from 9 to 19 degrees. The records also show that three tenths of an inch of snow fell on January 17 from about 2:00 a.m. to 11:00 a.m. and that there was no further precipitation of any kind until the accident.
Based on this record, defendant cannot be charged with notice of a small patch of ice on a relatively clean outdoor platform. While a common carrier like the Transit Authority must use ordinary care to keep its station platforms free from dangerous conditions (see Lewis v Metropolitan Transp. Auth., 99 AD2d 246, 248 [1st Dept 1984], affd 64 NY2d 670 [1984]), unless the defendant carrier created the danger, a plaintiff claiming negligence must prove that the carrier had actual or constructive notice of it (see Gordon v American Museum of Natural History, 67 NY2d 836, 837 [1986]). General awareness of below-freezing temperatures and the possibility that ice might form, without more, is insufficient to charge defendant with notice of the particular patch of ice on which plaintiff slipped (see Piacquadio v Recine Realty Corp., 84 NY2d 967, 969 [1994] [notice of liquid on the defendants’ stairs was not established where nothing in record established stairs were negligently maintained or otherwise dangerous]; Harrison v New York City Tr. Auth., 94 AD3d 512, 513 [1st Dept 2012] [the defendant’s knowledge that subway riders dropped MetroCards on floor did not constitute notice of the particular card on which the plaintiff slipped]).
Since plaintiff proffered no evidence that defendant knew about the particular ice patch on which she slipped, she had to set forth sufficient evidence of defendant’s constructive knowledge of the presence of ice patches. “To constitute constructive notice, a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant’s employees to discover and remedy it” (Gordon, 67 NY2d at 837-838).
Here, plaintiff’s evidence with respect to either element of constructive notice was lacking. A small, irregular patch of ice lying between the bumps on the surface of the safety stripe on a *478 subway platform shortly after dawn cannot be deemed “visible and apparent.” Plaintiff herself did not notice the patch until after she slipped.
Moreover, there was no evidence that defendant had a reasonable time to discover the ice patch and remedy it because it is unclear how and when the particular ice patch was formed. The ice could well have formed shortly before plaintiff slipped on it, and none of the evidence supports the claim that it formed any earlier. I disagree with the majority’s finding that circumstantial evidence supports plaintiffs theory that the patch was created when snow that fell on January 17 melted into water that dripped from the canopy onto the platform and then refroze. While plaintiff testified that she saw ice and snow dripping from the canopy on the day she slipped, contrary to the majority’s assertion, she did not state that the ice and snow dripped onto the area where she fell. The majority cites “recurrent dripping conditions” at the station as circumstantial evidence of constructive notice; however, the only evidence of recurrence was the station cleaner’s testimony that water frequently dripped from the canopy when it rained. It did not rain on either the day of the accident or the day before.
Moreover, a snow accumulation of three-tenths of an inch would not furnish enough water to create an ice patch, and, given that the temperature remained well below freezing during the course of the snowfall on January 17 through plaintiffs accident early the next morning, snow would not have melted during that period. Accordingly, it is unlikely that the snowfall was the source of the dripping water (see Simmons v Metropolitan Life Ins. Co., 84 NY2d 972, 973-974 [1994]).
Under these circumstances, the jury could only guess as to when the ice patch formed or the source of the ice, and its conclusion that defendant had time to discover and remedy it was purely speculative (see Disla v City of New York, 65 AD3d 949 [1st Dept 2009]; Manning v Americold Logistics, LLC, 33 AD3d 427 [1st Dept 2006]; Steo v New York Univ., 285 AD2d 420 [1st Dept 2001]).
The failure to establish notice warrants the dismissal of the complaint.